GRAHAM HUMPHRIES, EMPLOYEE v. CONE MILLS CORPORATION, EMPLOYER, AND LIBERTY MUTUAL INSURANCE COMPANY, INC., CARRIER

No. 8010IC1208

(Filed 16 June 1981)

**Master and Servant § 68— workers' compensation — occupational disease — permanent disability**

    Medical evidence presented by plaintiff was sufficient to establish that his chronic obstructive respiratory disease was caused by the conditions of his employment in the weave room of a textile plant, and medical testimony and plaintiff's own testimony sufficiently established that he is permanently disabled by the disease.

Humphries v. Cone Mills Corp.

APPEAL by defendants from North Carolina Industrial Commission. Opinion and Award filed 26 June 1980. Heard in the Court of Appeals 3 April 1981.

On 13 March 1978, plaintiff, Graham Humphries, filed a complaint with the North Carolina Industrial Commission (Commission) alleging that he had contracted an occupational respiratory disease caused by exposure to cotton dust while working for the defendant, Cone Mills Corporation (Cone Mills). Humphries is presently fifty-seven years old and began working in textile mills at the age of sixteen. He worked in the weave room of various mills from that time until his retirement from Cone Mills on 15 January 1976.

Humphries began working for Cone Mills at its Eno Plant in Hillsborough, North Carolina on 21 August 1969 as a loom fixer in the weave room. In 1971, he was promoted to Head Loom Fixer and worked in that position until 1973 when he was promoted to Supervisor of the weave room. Humphries remained in this supervisory position until his retirement in 1976.

Humphries smoked approximately three-fourths of a pack of cigarettes per day for thirty years before he quit smoking in 1969. In 1972, Humphries came under the care of Dr. Herbert O. Sieker of Duke Medical Center for treatment of respiratory problems that included shortness of breath, a tightness in his chest, and wheezing. Although under a regular course of treatment from Dr. Sieker, Humphries' respiratory problems worsened until he could no longer walk from one side of the weave room to the other without resting. Finally, in January 1976, Humphries stopped working because of his breathing problems, and he has not worked since that time.

The Commission upheld, and adopted as its own, an Opinion and Award by Deputy Commissioner Christine Denson in which she found that Humphries was "permanently and totally disabled as a result of [a] chronic obstructive respiratory disease." Humphries was awarded the maximum amount allowable under the Workers' Compensation Act of $146.00 per week for the remainder of his life. In its opinion, the Commission held that:

Plaintiff's chronic obstructive respiratory disease was due to causes and conditions which are characteristic of and

peculiar to his particular occupation and is not an ordinary disease of life to which the general public is equally exposed outside of the employment.

Defendants are before us appealing from this adverse decision by the Commission.

*Maupin, Taylor & Ellis, by Richard M. Lewis, and David V. Brooks, for defendant appellants.*

*Hassell & Hudson, by Charles R. Hassell, Jr., for plaintiff appellee.*

BECTON, Judge.

The scope of appellate review of an award made by the Commission is limited by the Workers' Compensation Act to "errors of law under the same terms and conditions as govern appeals from the superior court to the Court of Appeals in ordinary civil actions." G.S. 97-86. The Commission's award is "conclusive and binding [on this court] as to all questions of fact." *Id.* Our review for errors of law requires a "two-fold determination of whether the Commission's findings are supported by *any* competent evidence and whether its subsequent legal conclusions are justified by those findings. *See Barham v. Food World, Inc.,* 300 N.C. 329, 266 S.E. 2d 676 (1980); *Walston v. Burlington Industries,* 49 N.C. App. 301, 271 S.E. 2d 516 (1980)." *Buck v. Procter & Gamble,* 278 N.C. App. 268, 52 S.E. 2d 88 (1981).

Defendants argue that Humphries' evidence (1) fails to establish that his disease was caused by the conditions of his employment, and (2) fails to establish that he is permanently disabled by the disease. Humphries' claim was brought under the provision of G.S. 97-53(13) which deems an occupational disease to be:

Any disease . . . *which is proven to be due to causes and conditions* which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment. (Emphasis added.)

This statute in no way requires that the conditions of employment be the exclusive cause of the disease in order to be compen-

sable. In *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979), Chief Justice Sharp interpreted the language of G.S. 97-53(13) to mean that "[a] disease is 'characteristic' of a profession when there is a recognizable link between the nature of the job and *an increased risk of contracting the disease* in question." (Emphasis added.) 297 N.C. at 472, 256 S.E. 2d at 198. Moreover, *Booker* holds that the disease need not be one which "originates exclusively from the particular kind of employment in which the employee is engaged, but rather . . . employment must result in a hazard which distinguishes it in character from the general run of occupations. . . ." *Id.* at 473, 256 S.E. 2d at 199.

Defendants argue that the evidence presented only shows, at best, that plaintiff's condition was *aggravated* by the conditions of his employment, not *caused* by them. Our reading of the record is otherwise. Dr. Sieker, Humphries' treating physician and an expert in the field of respiratory disease, testified: "It is my opinion that the cotton dust exposure *contributed* to his bronchopulmonary disease." On cross examination after discussing the contributory effects of cigarette smoking, Dr. Sieker pointed out that "it's possible to say that both [smoking and cotton dust exposure] were contributing factors" in causing the disease, but once Humphries stopped smoking in 1969, "he was still exposed to cotton dust, he had progression of symptoms so the cotton dust of itself must have been a factor in causing trouble."

Dr. Herbert A. Saltzman, an expert in the field of occupational disease, testified that based on his examination of Humphries, "it is more likely than not that [Humphries'] condition is due to byssinosis [a respiratory disease common to textile mill workers]." The testimony of Drs. Sieker and Saltzman is competent evidence which supports the Commission's finding that the nature and condition of Humphries' employment caused him to contract, or at least increased the risk of his contracting, an obstructive respiratory disease.

Defendants also claim that Humphries fails to establish that he is permanently disabled. Defendants concede that Dr. Sieker is competent to offer an opinion concerning Humphries' degree of disability from certain physical activities. The defendants claim, however, that Dr. Sieker, over objection, was improperly permitted to give his opinion on the ultimate issue in the case — whether

Humphries was unable to work at all — and that an improper foundation was laid for the hypothetical opinion question asked of Dr. Sieker. Regardless of the merits of defendants' objection to this question, no objection was made at trial when Dr. Sieker testified that:

> Subsequent to March, 1976, I had occasion to send further correspondence with regard to his disability. That was on 15 February 1978. The letter dated 15 February 1978 says that I confirm a conversation with the insurance company, Provident Life and Accident Insurance Company, of that date, February 15, 1978, and it indicates that I consider Mr. Humphries permanently disabled because of his severe lung disease. The last physician statement was dated August 8, 1977, again stating that he was permanently disabled.

It is well established that if an objection is not made when a question is asked and the answer given, the right to have that evidence excluded on appeal is waived. *Johnson v. Lamb*, 273 N.C. 701, 161 S.E. 2d 131 (1968). Moreover, Dr. Saltzman testified: "I think that [Humphries] was significantly disabled at the time of my assessment [on 19 September 1977]." And, Humphries testified that just prior to retirement, he could not walk from one end of the weave room to the other without having to rest; that he had to rest when climbing as few as five steps in his trailer; and that he could only sleep an hour and a half at a time because of his congestion. Given the expert testimony in the record and Humphries' own testimony about his physical condition, the Industrial Commission had before it competent evidence to support its finding that Humphries was permanently disabled.

The evidence presented, then, supports the Commission's findings that Humphries' disease was caused by the conditions of his employment and that this occupational disease was sufficiently severe to permanently disable him. These findings, taken as true, are competent to support the Commission in concluding as a matter of law that Humphries' disease is compensable under the Workers' Compensation Act and that he is entitled to compensation for permanent and total disability. Based upon this determination, the Opinion and Award of the Industrial Commission are

Affirmed.

Judge MARTIN (Robert M.) and Judge WHICHARD concur.