The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are bound by and subject to the provisions of the Workers' Compensation Act.
2. Defendant-employer employed three or more employees on May 4, 1993.
3. The employer-employee relationship existed on May 4, 1993.
4. Defendant-employer is a duly qualified self-insured employer with Hewitt, Coleman and Associates, Inc. as its servicing agent.
5. Plaintiff's average weekly wages were $313.90 with a corresponding compensation rate of $213.28.
6. All stipulations contained in the Pre-Trial Agreement are received into evidence. Plaintiff's exhibits 1 through 8 identified in exhibit B of the Pre-Trial Agreement were received into evidence. Defendants' exhibits A through J identified in exhibit C of the Pre-Trial Agreement were received into evidence.
* * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff was born on August 12, 1929. He went to work for defendant-employer during 1946. He worked for defendant-employer in various capacities from 1946 through May 4, 1993.
2. Plaintiff worked primarily in the spinning department but he also worked in carding and winding from time to time. He usually worked six to seven days a week, sometimes sixteen hours a day. He was regularly assigned to the clean-up crew which worked on Saturdays after the mill ceased processing cotton.
3. The atmosphere in defendant-employer's workplace was ventilated with windows until 1967 when air conditioning was installed. Pneumafil devices were installed on the spinning frames after 1967. The pneumafil is a box with a suction duct which removes some of the airborne dust particles from the spinning frames. Defendant-employer primarily processed raw cotton through the opening room at its facility from 1946 through May 4, 1993.
4. Plaintiff has a fifth-grade education and limited literacy. He began smoking cigarettes at about age 10 and smoked one to two packs per day most of his adult life. He has been unable to stop smoking in spite of medical advice to do so. He has, nevertheless, been able to reduce his cigarette consumption to 1/2 pack per day.
5. Plaintiff's employment with defendant-employer caused or significantly contributed to the development of his occupational disease, chronic obstructive pulmonary disease. Further, his employment also exposed him to and increased the risk of developing this disease.
6. Defendant-employer has done cotton dust studies in the spinning department since September 27, 1980 on a periodic basis. These studies were done during normal operations and did not monitor dust levels during clean-up operations or even continuously during normal operations. The dust monitoring was done twice yearly with eight dust collection points for the 176 frames in the spinning room. There was no monitoring done during clean-up operations.
7. Plaintiff began treating with Satish K. Kumar, M.D. on December 13, 1990 on referral from defendant-employer. He was diagnosed with having a moderate amount of obstructive lung disease. Dr. Kumar reported the results of his examination to defendant-employer by letter dated January 11, 1991 with the recommendation that plaintiff should avoid dust, fumes, chemicals, lint, smoking, perfumes or any kind of irritants.
8. Dr. Kumar advised plaintiff that the damage to his lungs was a combination of smoking and being exposed to lint at Rocky Mount Mills. He recommended that plaintiff quit smoking and avoid dust, fumes, chemicals, lint, perfumes or any kind of irritant.
9. Plaintiff did not stop smoking cigarettes and he continued working at Rocky Mount Mills. Dr. Kumar gave no advice to plaintiff as to whether he should work. Plaintiff's pulmonary condition did not render him incapable of earning wages during December 1990.
10. Plaintiff was last examined by Dr. Kumar on June 3, 1993. His pulmonary function as measured on June 3, 1993 in comparison to the December 13, 1990 measurements had decreased. Forced vital capacity was down from 85% in December 1990 to 78% during June 1993. His forced expiratory volume in one second was reduced from 60% in December 1990 to 53% in June 1993.
11. Plaintiff continued complaining to Dr. Kumar that his ability to breathe was worse at work than it was elsewhere. Accordingly, Dr. Kumar authorized a three-week period away from work beginning on April 9, 1993. Plaintiff returned to work on Monday, May 3, 1993 and experienced an increase in his symptoms. He worked three hours on May 4, 1993, was unable to continue working because of increased symptoms and has not worked at Rocky Mount Mills or elsewhere after May 4, 1993. While plaintiff did not stop smoking cigarettes when advised to do so during December 1990, he did nevertheless reduce the number of cigarettes he smoked on a daily basis. He continued exposure after December 1990 to cotton dust during employment with defendant-employer through May 4, 1993. During this period of time, plaintiff's pulmonary function worsened until he became permanently and totally incapable of earning wages on May 4, 1993.
12. Smoking cigarettes is detrimental to the health of human beings because it is a known cause for chronic bronchitis, emphysema, cancer, heart disease and ulcers. Cigarette smoking decreases life expectancy.
13. Dr. Kumar did not definitely recommend plaintiff to stop working until June 3, 1993 after he was allowed to take a three-week absence from work and experienced an increase in symptoms when he returned to work after the layoff.
14. Plaintiff was examined for the purpose of diagnosis and treatment recommendations by Herbert A. Saltzman, M.D. on July 13, 1992, August 25, 1992, April 1, 1993 and July 6, 1993. While Dr. Saltzman declared that plaintiff was medically unfit to work in an ordinary industrial setting, he never recommended to plaintiff that he stop working.
15. Plaintiff was examined by Ted R. Kunstling, M.D. on March 21, 1995 on referral by the Industrial Commission for evaluation of possible byssinosis. Plaintiff was then suffering from class IV respiratory impairment. He was totally and permanently incapable of earning wages based upon respiratory dysfunction from his occupational lung disease.
16. Plaintiff has permanent injury to the airways epithelium caused by cigarette smoking and occupational exposure to cotton dust.
17. Plaintiff was placed at an increased risk of developing chronic obstructive pulmonary disease secondary to cotton dust exposure during employment with defendants from 1946 through May 4, 1993.
18. Plaintiff's chronic obstructive pulmonary disease was caused by both cigarette smoke and cotton dust inhalation.
19. Plaintiff became totally and permanently incapable of earning wages in the same or any other employment secondary to his occupational disease of May 4, 1993
20. Plaintiff filed a written claim in this matter with the Industrial Commission on August 19, 1997.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The Industrial Commission has jurisdictional authority to hear this matter. Plaintiff filed a written claim within 2 years of the date that plaintiff had sustained a disabling alleged occupational disease. N.C. Gen. Stat. § 97-58.
2. Plaintiff's occupational exposure to respirable pulmonary irritants while working at Rocky Mount Mills from 1946 through May 4, 1993 increased his risk of developing lung disease and was a cause of his chronic obstructive pulmonary disease. N.C. Gen. Stat. § 97-52; § 97-53(13); Rutledge v. Tultex Corp.,308 N.C. 85, 301 S.E.2d 359 (1983); Booker v. Duke Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979); Humphries v. Cone Mills,52 N.C. App. 612, 279 S.E.2d 832 (1981).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for the development of his occupational disease is granted.
2. Defendants shall pay and plaintiff shall accept compensation for total, permanent disability beginning June 4, 1993 at $213.28 per week for life.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from, and or lessen the period of disability associated therewith, defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of his occupational disease.
4. Attorneys fees in the amount of 25% of accrued weekly compensation for permanent total disability is hereby awarded to plaintiff's counsel and thereafter every fourth payment is approved as compensation to be paid directly to counsel for plaintiff.
5. Defendants shall pay the costs.
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ___________________ DIANNE C. SELLERS COMMISSIONER
S/ ___________________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/rst