The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before then Deputy Commissioner Ballance and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
******************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. Those specific stipulations entered into by the parties which were stated in a Pre-trial Agreement are incorporated herein by reference.
2. The defendants did not stipulate to the jurisdiction of the Industrial Commission claiming a bar to jurisdiction based on N.C. Gen. Stat. § 97-57.
3. The parties stipulated to five periods of employment with Stedman/Sara Lee as shown in the Pre-trial Agreement between 1968 and 1989 and employment with M.J. Soffe Company from November, 1989 through June 13, 1990.
4. The parties stipulated to a set of medical records which are specifically enumerated in the Pre-trial Agreement.
******************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff was born on February 9, 1942. She dropped out of school during the Spring of 1962 while attending the eleventh grade to work full-time in support of her family. At the time of hearing she had three brothers and four sisters all of whom were living and in good health; her mother and father were both in their 70's and in good health; she had four children born August 9, 1967, February 7, 1970, February 13, 1971 and August 8, 1982 and all of her children were living and in good health. Plaintiff always recalls being in good health until the Fall of 1985 when she began coughing and having trouble breathing while working at Stedman Corporation/Sara Lee Products (hereinafter Stedman Corporation or Stedman).
2. Plaintiff worked on her father's farm beginning at an early age. She eventually was able to work as a field hand with her brothers. She was the only female child in the family who did not work inside the house.
3. Plaintiff went to work during 1964 for B.F. Goodrich in Lumberton as a tongue binder for tennis shoes. She worked in this capacity for four years. The tennis shoe manufacturing operation was not dusty and she had no symptoms of pulmonary problems while working at this facility.
4. The plaintiff was employed by the defendant, Stedman Corporation as a seamstress from May 27, 1968 through May 27, 1969, from March 18, 1970 through April 21, 1971, from February 2, 1972 through November 22, 1972 and from May 22, 1975 through September 25, 1989.
5. Plaintiff's principal job for Stedman Corporation was that of a sewing machine operator setting sleeves. She was also required to perform other functions involving material handling, repairing tee-shirts, cutting patterns, inventorying, turning tee-shirts, and cleaning up. The room where she worked at Stedman had about 275 sewing machines. The floors were made of concrete and the walls of concrete block. The floors and walls were painted gray. Air-conditioning ducts, piping and fans hung from twenty-foot high ceilings.
6. The finished cloth used at Stedman was transported from Asheboro. The cloth was mostly 100% cotton with some 50-50 cotton to polyester blends. Some of the material was pre-cut and some of the material was cut at the Stedman sewing facility.
7. The material being processed at the Stedman facility was usually a thin white material until the early 1980's when Stedman started processing high crew wear. The high crew material was thick and came in several different colors. The unlaundered, dyed cloth would cause Ms. Locklear's eyes and throat to burn.
8. Throughout plaintiff's employment with Stedman, plaintiff was exposed to and inhaled cotton dust and lint on a daily basis. The cut and sew operation produced airborne dust and lint which would accumulate in considerable quantities on employees and other surfaces in the sewing room at the facility. The lint and dust would also accumulate in the nose and throat of Plaintiff and other employees. At the end of each shift the employees were required to clean their machines and themselves with compressed air.
9. Plaintiff's last period of employment was at M.J. Soffe from November, 1989 through June 13, 1990. During the approximately seven months plaintiff worked at M.J. Soffe as a sewing operator, plaintiff's work environment was cleaner than the Stedman plant, partly because the sewing machines had an internal system that vacuumed dust and lint away from the cutting knife. The air at M.J. Soffe, nevertheless, carried airborne dust and lint particles. The dust and lint would accumulate on plaintiff and other employees in much the same way as at Stedman, but in lesser quantities. All of the cloth processed at M.J. Soffe was dyed. Compressed air was used to remove lint and dust from the employees after each shift. Also, plaintiff had to walk through a spinning room at M.J. Soffe to get to and from the sewing room at least four (4) times each day. The cloth processed at M.J. Soffe was 100% cotton.
10. The coughing and wheezing which plaintiff began to experience while working for Stedman Corporation in the Fall of 1985 grew progressively worse. By the Summer of 1988, the coughing and wheezing had become a constant symptom. Plaintiff transferred from Stedman to M.J. Soffe during November 1989 based upon her understanding that the M.J. Soffe plant was cleaner. Her symptoms nevertheless progressed in severity during her employment at M.J. Soffe.
11. Plaintiff has been treated at Lumber River Medical Associates, P.A. by Dr. Lloyd C. McCaskill, a family practice physician and other providers since the early part of 1983. Most of her visits beginning in May, 1989 were associated with allergic rhinorrhea or asthma and sinusitis. Prior to May, 1989, Dr. McCaskill's readable notes do not appear to reference asthma.
12. On February 4, 1989, while plaintiff was working with other employees who were selected by their supervisor to set sleeves that Saturday, a roof mounted air conditioner unit was simultaneously being serviced. A liquid chemical rained from the air conditioning unit onto the floor in the area where plaintiff and co-employees were working at Stedman. The fumes from the chemical took plaintiff's breath away. Two days later, plaintiff was admitted to Moore Regional Hospital.
13. Plaintiff was examined by F. Farrell Collins, M.D. on February 6, 1989. She was in severe respiratory distress, looked very ill and was admitted immediately to the hospital. She had no family history of asthma. She was a nonsmoker and non-drinker. She had no recent pet acquisition or job changes and had not changed houses or environments at all. Dr. Collins' examination at that time was negative for asthma, heart disease, hay fever, diabetes and tuberculosis.
14. Plaintiff was discharged from Moore Regional Hospital by Dr. Collins on February 15, 1989 in a much improved condition. Her CAT scan showed severe obstruction of pulmonary function. Dr. Collins' discharge diagnosis was severe asthmatic bronchitis and severe airway disease. Plaintiff's lung condition was noted to be reversible; however, Dr. Collins had difficulty in determining an etiologic diagnosis but indicated in the discharge summary that they might well be dealing with work environment problems.
15. Plaintiff returned to work at Stedman and worked through September, 1989.
16. Plaintiff became disabled secondary to asthma or severe obstructive lung disease on June 13, 1990 while working at M.J. Soffe. Forms 18 were filed naming Stedman Corporation and M.J. Soffe Company, Inc. as responsible employers on June 8, 1992 asserting the right to compensation for incapacity to earn wages based upon occupational lung disease.
17. Plaintiff's exposure to dust, lint and other respirable particles during her employment at Stedman Corporation permanently damaged the epithelium of her lungs, thereby creating epithelial permeability. Exposure to dust, lint and other respirable particles while working at Stedman Corporation also significantly increased plaintiff's risk of developing permanent epithelium damage over that of the general public.
18. Plaintiff's occupational exposure to dirt, lint and other respirable pulmonary irritants during her employment with Stedman Corporation significantly contributed to her severe obstructive lung disease/asthma and exposed her to a greater risk over the general population of developing obstructive lung disease/asthma.
19. Plaintiff's exposure to lint, dust and other respirable particles while working for M.J. Soffe, Inc. proximately augmented, however slight, her permanent epithelium damage and her pulmonary diseases.
20. Plaintiff has been totally and permanently incapable of earning wages in the same or any other employment since June 13, 1990.
21. Plaintiff has been hospitalized since June 13, 1990 for treatment of her severe pulmonary obstruction/asthma on multiple occasions at Southeastern General Hospital and North Carolina Memorial Hospital.
22. Martin L. Brooks, M.D. became plaintiff's treating physician during the time she worked at M.J. Soffe and he advised her to stop work. Although plaintiff terminated her employment based upon his advice on June 13, 1990, Dr. Brooks stated in May, 1991 that he did not think plaintiff's problems were work-related.
23. James M. Sullivan, P.A.C., a physician's assistant for Dr. McCaskill, has treated plaintiff for asthma and other illnesses. Mr. Sullivan did not tell plaintiff her asthma was job related or that she should quit her job.
24. Dr. Lloyd C. McCaskill last examined plaintiff in his office on November 8, 1993. Dr. McCaskill was unable to render an opinion on whether plaintiff's employment exposure aggravated her asthmatic condition. He did not advise plaintiff that her condition was work related, nor did he advise her to stop working.
25. Dr. Farrell Collins expressed expert opinion that he doubted plaintiff's asthma was work-related. This opinion, however, was based upon the incorrect assumption that plaintiff's job remained the same during her more than twenty years of employment in the sewing industry. Dr. Collins' opinion and testimony, in general, was inconclusive on the issue of causation, or even on his own diagnosis. He treated plaintiff on several occasions and did not take an extensive history or do further testing to determine if plaintiff's condition was work related. No weight is accorded the opinion of Dr. Collins regarding the relationship of plaintiff's work environment to her asthma. It is noted, however, that for purposes of establishing when plaintiff's disability began, Dr. Collins did not advise plaintiff that her condition was work-related during the period he treated plaintiff.
26. Greater weight and credibility is accorded to the opinions of the expert pulmonary physicians who examined and/or treated plaintiff after June 1990 over those of Drs. Collins, Brooks and McCaskill. Dr. John Eugene Gardella, who is an expert in the field of internal medicine and pulmonary disease and also a member of the Industrial Commission's panel of pulmonary physicians, expressed expert opinion that plaintiff's employment at Stedman Corporation and M.J. Soffe placed her at an increased risk of developing pulmonary disease over the general public, but he would not express an opinion on whether plaintiff's employment exposure at Stedman and M.J. Soffe significantly contributed to her pulmonary condition. He did express the opinion that plaintiff's environmental exposures while working at Stedman and M.J. Soffe may well have contributed to her permanent epithelium (surface lining of the airways) damage. He also expressed his expert opinion that plaintiff's work environment at M.J. Soffe likely augmented, however slight, her pulmonary disease process.
27. Dr. Scott H. Donaldson, who is an expert in internal medicine and pulmonary diseases working at UNC Memorial Hospital, is plaintiff's treating pulmonary disease physician. According to Dr. Donaldson, plaintiff's examination revealed damage to the epithelium and extensive inflammation beneath the epithelium. The purpose of the airway epithelium is to serve as a defense to trap pollutants, dust particles, allergies, etc. and move them from the lungs. Dr. Donaldson expressed expert opinion that plaintiff's work exposed her to an increased risk over the general population for developing pulmonary diseases, but plaintiff's work probably did not cause her asthma. He further expressed expert opinion, however, that "I think it's likely that her exposure to dust and lint contributed to a worsening of her asthma." He did not find any other clear factors, other than occupational exposure, which would aggravate her asthma. Dr. Donaldson was also of the opinion that plaintiff's occupation significantly contributed to her permanent epithelium damage.
28. Plaintiff's average weekly wage of $250.00 yields a compensation rate of $166.68 per week.
******************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff became totally and permanently incapable of earning wages secondary to severe obstructive lung disease/asthma and permanent epithelium damage on June 13, 1990. N.C.G.S. § 97-54; N.C.G.S. § 97-2(9).
2. Plaintiff timely filed her claims for medical compensation and compensation for incapacity to earn wages against Stedman Corporation and M.J. Soffe, Inc. on June 8, 1992. N.C.G.S. § 97-58.
3. Although plaintiff may have believed that her pulmonary problems were work-related, there is insufficient evidence of record from which to prove by its greater weight that she was advised by competent medical authority that she was suffering from an occupationally related disease prior to June 13, 1990, when she was taken out of work. N.C.G.S. § 97-58; Dowdy v. FieldcrestMills, 308 N.C. 701, 304 S.E.2d 215 (1983).
4. The Commission has subject matter and personal jurisdiction of this claim. N.C.G.S. §§ 97-2(1), (2) (3); N.C.G.S. § 97-56; N.C.G.S. 97-58; Dowdy v. Fieldcrest Mills, supra;Taylor v. Stephens and Co., 300 N.C. 94, 265 S.E.2d 144 (1980).
5. Plaintiff's occupational exposure to dust, lint and other respirable pulmonary irritants while working at Stedman Corporation significantly increased her risk of developing epithelium damage and obstructive pulmonary disease over that of the general public and either significantly contributed to the development of, or significantly aggravated her severe obstructive lung disease/asthma. Plaintiff's employment also significantly contributed to the development of epithelium damage. N.C.G.S. § 97-52; N.C.G.S. § 97-53(13); Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983); Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979); Humphries v. Cove Mills,52 N.C. App. 612; 279 S.E.2d 832 (1981).
6. Plaintiff's occupational exposure to dust, lint and other respirable pulmonary irritants while working for M.J. Soffe, Inc. proximately augmented her severe obstructive lung disease/asthma and epithelium damage, however slight. N.C.G.S. § 97-57; Caulder v. Mills, 314 N.C. 70, 331 S.E.2d 646 (1985);Rutledge v. Tultex Corp., supra p. 89; Haynes v. FeldspanProducing Co., 222 N.C. 163, 22 S.E.2d 275 (1942).
7. Plaintiff's occupational exposure to respirable pulmonary irritants at Stedman Corporation, which significantly contributed to her permanent epithelium damage and obstructive pulmonary disease/asthma, and at M.J. Soffe, Inc., which proximately augmented, however slight, her permanent epithelium damage and obstructive pulmonary disease/asthma, rendered her totally and permanently incapable of earning wages in the same or any other employment beginning June 13, 1990. N.C.G.S. § 97-52; N.C.G.S. § 97-54; N.C.G.S. § 97-55; N.C.G.S. § 97-29; N.C.G.S. § 97-2(9); Rutledge v. Tultex Corp., supra.
******************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant, M.J. Soffe, Inc., shall pay plaintiff compensation for total permanent disability beginning June 13, 1990 at $166.68 per week for life and, subject to fee schedule review and approval by the Commission, medical compensation for life that is reasonably required to effect a cure or relieve symptoms associated with occupational disease. The accrued compensation shall be paid in a lump sum.
2. Medical compensation before November, 1989 shall be paid by Stedman Corporation/Sara Lee and thereafter by M.J. Soffe, Inc. when bills for same have been submitted to defendants and approved through procedures adopted by the Commission.
3. An attorney fee in the amount of twenty-five (25%) percent of the accrued weekly compensation due plaintiff shall be deducted and paid directly to plaintiff's attorney. Thereafter every fourth compensation payment due plaintiff shall be deducted and paid directly to counsel for plaintiff.
4. Defendants shall pay the costs of this appeal.
This is the _____ day of September, 1997.
 S/ __________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________________ COY M. VANCE COMMISSIONER