DANA L. GARREN, EMPLOYEE, PLAINTIFF-APPELLEE v. P.H. GLATFELTER CO., SELF-INSURED EMPLOYER, (ALEXIS RISK MANAGEMENT SERVICES, INC. SERVICING AGENT), DEFENDANT-APPELLANT

No. COA97-1461

(Filed 6 October 1998)

**1. Workers' Compensation— occupational disease—rotator cuff injury**

The Industrial Commission correctly determined that plaintiff had carried her burden in establishing the existence of an occupational disease where plaintiff's work involved loading bobbins on a machine and later removing the bobbins and stacking them on a pallet and she alleged a rotator cuff injury. The Commission's fact finding will not be disturbed on appeal if supported by any competent evidence and the evidence here tended show that plaintiff's occupation required repetitive activity involving her shoulders.

**2. Workers' Compensation— employment as significant contributing factor—evidence sufficient to support finding**

A worker's compensation plaintiff met her burden of showing that her employment caused or was a significant contributing factor to her torn rotator cuff, and the record reflects at least competent evidence to support the Commission's conclusion on this point, where one of plaintiff's doctors acknowledged the difficulty in pinpointing the exact cause of plaintiff's condition

because she also cleaned houses, but made clear that both activities could have contributed to her condition, at the very least.

**3. Workers' Compensation— videotape of job—not an accurate reflection of conditions**

The Industrial Commission ·did not err by "ignoring" a videotape offered by defendant in deciding that plaintiff's work significantly contributed to her torn rotator cuff where defendant contended that the videotape accurately reflected plaintiff's job, but the man used as a model in the video is much larger and certainly much stronger than plaintiff and one of plaintiff's doctors testified that he would not base his answers on the tape because the video was planned, did not show the patient, did not show the material that patient was using at the time of the injury, and did not document the forces or weights involved.

**4. Workers' Compensation— cause of condition—non-work related factors**

The Industrial Commission did not err by finding that plaintiff's torn rotator cuff is work related where defendant contended that she injured her shoulder cleaning houses. Plaintiff told both of her doctors that her shoulder problems began in early 1991 and she only began cleaning houses in about August of 1993. N.C.G.S. § 97-53(13) does not require that the conditions of employment be the exclusive cause of the occupational disease and a medical expert's overall opinion is not rendered incompetent merely because that expert recognizes other possible causes of plaintiff's condition.

Appeal by defendant from opinion and award of the North Carolina Industrial Commission filed 28 August 1997. Heard in the Court of Appeals 27 August 1998.

*David Gantt for plaintiff-appellee.*

*Lewis & Roberts, P.L.L.C., by Jack S. Holmes and John H. Ruocchio, for defendant-appellant.*

McGEE, Judge.

Defendant P.H. Glatfelter Co. appeals from opinion and award of the North Carolina Industrial Commission awarding plaintiff compensation of $466.00 per week from 5 April 1994 until plaintiff returns to work or until further order of the Commission. The award arose

GARREN v. P.H. GLATFELTER CO.

[131 N.C. App. 93 (1998)]

from plaintiff establishing she suffers from an occupational disease, specifically a rotator cuff tear. Defendant was ordered to pay plaintiff's medical bills as they relate to her occupational disease and to provide vocational rehabilitation.

Plaintiff was employed by defendant for seventeen years and worked as a reclaim operator from 13 January 1992 until 5 April 1994, her last day of work. From April 1993 to April 1994, plaintiff also worked part-time as a relief supervisor. The Commission's findings of fact stated that as a reclaim operator, plaintiff ran two machines at once. She lifted defective bobbins of cigarette paper onto the reclaim machine, threaded the paper through the machine and attached it to an end spool. She ran the bobbin through the machine onto another core, creating a new bobbin free of defects. Plaintiff then removed the bobbin and stacked it on a pallet, sometimes up to fifty-five bobbins high. Plaintiff ran seventy to eighty bobbins, weighing six to twenty pounds, during an eight hour shift. When the cores of the bobbins were damaged, plaintiff frequently beat them into place with her hands.

Plaintiff's supervisor, Carolyn Owenby, testified that in the spring of 1994 plaintiff complained of a "rotary cuff" injury. At that time, however, Owenby testified plaintiff did not seek assistance from her employer regarding her injury. Rather, plaintiff stated she believed she had injured her shoulder cleaning houses. Plaintiff, working with an assistant, supplemented her income with defendant by cleaning ten to twelve houses per week for eight months, ending in April 1994.

Plaintiff testified she first felt pain in her shoulder in 1991, three years before going to the doctor. Plaintiff went to her family doctor, Dr. James Keeley, "before March" of 1994, and received a cortisone shot in her arm. The cortisone shot did not help, and plaintiff went to an orthopaedic surgeon, Dr. Angus W. Graham, III, on 17 March 1994. Dr. Graham diagnosed plaintiff with a rotator cuff tear and performed three surgeries on plaintiff over a six-month period. The surgeries were unsuccessful. Plaintiff consulted Dr. James S. Thompson on 31 January 1995, and Dr. Thompson performed a fourth surgery, which was more successful. Dr. Thompson recommended plaintiff undergo physical therapy before returning to work.

I.

[1] Defendant first argues the Commission erred in concluding that plaintiff's rotator cuff tear was the result of an occupational disease, and that plaintiff was disabled as a result. We disagree.

An occupational disease is defined as:

> Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

N.C. Gen. Stat. § 97-53(13) (1991). In *Perry v. Burlington Industries, Inc.*, 80 N.C. App. 650, 343 S.E.2d 215 (1986), our Court stated:

> A disease is an occupational disease compensable under N.C. Gen. Stat. 97-53(13) if claimant's employment exposed him "to a greater risk of contracting this disease than members of the public generally . . ." and such exposure "significantly contributed to, or was a significant causal factor in, the disease's development."

*Perry* at 654, 343 S.E.2d at 218 (quoting *Rutledge v. Tultex Corp.*, 308 N.C. 85, 101, 301 S.E.2d 359, 369-70 (1983)). Three elements are required to prove a compensable occupational disease:

> (1) the disease must be characteristic of a trade or occupation, (2) the disease [must not be] an ordinary disease of life to which the public is equally exposed outside of the employment, and (3) there must be proof of causation, *i.e.*, proof of a causal connection between the disease and the employment.

*Perry* at 654, 343 S.E.2d at 218 (citation omitted). There is sufficient evidence in this case to support the Commission's finding that plaintiff has in fact developed an occupational disease while in the course and scope of her employment.

The standard by which we review decisions by the Industrial Commission was stated in *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 432, 342 S.E.2d 798, 803 (1986): "The Commission's fact findings will not be disturbed on appeal if supported by any competent evidence even if there is evidence in the record which would support a contrary finding." *Peoples* at 432, 342 S.E.2d at 803 (quoting *Jones v. Desk Co.*, 264 N.C. 401, 141 S.E.2d 632 (1965)).

The evidence tends to show that plaintiff's occupation required repetitive activity involving her shoulders. Plaintiff lifted bobbins weighing from six to twenty pounds. Plaintiff, who is five feet and one inch tall, also stacked bobbins on top of each other, which involved

overhead lifting. Plaintiff testified that some days the overhead lifting that was required lasted "all day long." Plaintiff also had to frequently beat the bobbins into place because the cores were damaged.

Both of plaintiff's medical experts testified in their depositions that the activities of plaintiff's job could have caused her occupational disease. In response to the question of whether plaintiff's job was a significant contributing or causal factor to plaintiff's condition, Dr. Graham stated, "I would say that the answer could be yes; that either it could be contributing and it could be causal." Dr. Graham stated that using the upper extremities in a repetitive fashion involving "excessive stress," or "jerking or pulling," could "certainly have been an aggravating activity." He stated that based upon an individual's level of fitness and body strength, this repetitive, excessive stress "could actually be a causal factor." Dr. Thompson also stated in his deposition: "[S]pecifically, the activities that could aggravate acromioclavicular joint problems, impingement or rotator cuff disease would be placing and removing the bobbins from the spindle, tightening the nut and especially loosening the nut from the spindle, lifting the bobbins and stacking the bobbins." Both doctors also testified that due to her occupation, plaintiff had a greater increased exposure to rotator cuff injury than members of the general public.

Based upon the medical testimony, the Commission correctly determined that plaintiff had carried her burden in establishing the existence of an occupational disease.

II.

[2] Defendant next contends that plaintiff's employment did not significantly contribute to or cause her shoulder condition. We disagree.

In his deposition, Dr. Graham was asked whether he had an opinion to a reasonable degree of medical certainty whether plaintiff's work as a reclaim operator was a "significant contributing or causal factor" of her condition. Dr. Graham stated "the answer could be yes," based in part on the fact that plaintiff's condition was "chronic in development, meaning slow in onset." Dr. Graham acknowledged the difficulty in pin-pointing the exact cause of plaintiff's condition, as plaintiff also cleaned houses six days a week. However, Dr. Graham made clear that, at the very least, both activities could have contributed to the condition of plaintiff's shoulder. In his deposition, the following exchange took place between plaintiff's counsel and Dr. Graham:

Q: And do you have an opinion, satisfactory to yourself and to a reasonable degree of medical certainty, as to whether or not [plaintiff's] acts and work as you saw on the video over the 16, 17 years placed her at a greater risk to getting a rotator cuff problem that you treated her for than the general public as a whole that didn't work at a place like [defendant's], doing the kind of work you saw on the video?

  Mr. Holmes: Objection.

A: I think by virtue of the fact that she's using her upper extremities, the answer is probable—is "yes."

. . .

Q: Do you have an opinion . . . as to whether or not the work that [plaintiff] did at [defendant's] aggravated or accelerated the problems she had that you treated her for concerning her rotator cuff?

A: It could have aggravated it, and it could have accelerated it.

In accordance with N.C. Gen. Stat. § 97-53(13) and *Perry*, we agree with the Commission that plaintiff has met her burden in showing her employment with defendant caused or was a significant contributing factor to her ailment. In following our standard of review for cases from the Industrial Commission, we also find the record reflects at least "competent evidence" to support the Commission's conclusion on this point.

### III.

[3] Defendant next argues that a videotape it offered into evidence accurately reflected plaintiff's job as a reclaim operator, and the Commission erred by "ignoring" the videotape in making its decision. The videotape tended to show plaintiff's job as a light-duty position, involving no overhead lifting. Defendant, therefore, contends plaintiff's job with defendant could not be the source of her rotator cuff tear. The videotape was stipulated into evidence; both plaintiff and her supervisor, Carolyn Owenby, testified the videotape accurately depicted the reclaim operator position. To the extent the videotape accurately reflected the position of a reclaim operator, we agree with defendant's assessment. We disagree, however, that the videotape accurately portrayed the position in relation to plaintiff. Thus, we do not agree with defendant's assertion that the videotape proves that plaintiff's position as a reclaim operator could not have been a significant causal factor of plaintiff's rotator cuff tear.

The videotape showed the reclaim operator position as a light duty position, not involving repetitive or strenuous tasks using the shoulder. The videotape depicted a man placing and removing bobbins from a spindle, tightening the nut that secures the bobbins, loosening the nut from the spindle, and lifting and stacking the bobbins. However, the man used as a model in the video is much larger and certainly much stronger than plaintiff. Plaintiff is five feet and one inch tall, weighs approximately 114 pounds and, as noted by Dr. Thompson, has "thin arms." The man in the video was not forced to beat the cores of the bobbins, nor place bobbins on a pallet that required overhead lifting, both of which plaintiff testified she often did. Dr. Thompson stated that he would not base any of his answers as to whether plaintiff had sustained a shoulder injury at work on the videotape:

> Because there are no forces measured on the tape, the weight of the bobbins is not documented, the force required to remove the bobbins from the spindles is not documented, the force required to place the spindle on the—or place a bobbin on the spindle is not documented, the videotape is done by a man who's much larger than [plaintiff], the videotape is planned.

> It's not the patient on the videotape. It's not the bobbins that [plaintiff] was using at the time.

For these reasons, we find no error by the Commission as to this argument.

## IV.

[4] Defendant contends the medical evidence presented establishes that plaintiff's condition is not work related. Specifically, defendant argues plaintiff injured her shoulder cleaning houses, which plaintiff did approximately six evenings per week for eight months ending in April 1994.

Plaintiff testified she told both Dr. Graham and Dr. Thompson that her shoulder problems began in early 1991. Plaintiff only began cleaning houses in approximately August of 1993. We have previously held that N.C. Gen. Stat. § 97-53(13) does not require the conditions of employment to be the exclusive cause of the occupational disease in order for it to be compensable. *Humphries v. Cone Mills Corp.*, 52 N.C. App. 612, 279 S.E.2d 56, *disc. review denied*, 304 N.C. 390, 285 S.E.2d 832 (1981); *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E.2d

GARREN v. P.H. GLATFELTER CO.

[131 N.C. App. 93 (1998)]

359 (1983). Assuming *arguendo* that plaintiff's job cleaning houses aggravated or otherwise affected plaintiff's shoulder, plaintiff's claim would nevertheless be compensable. Merely because a medical expert recognizes other possible causes of the plaintiff's condition, the expert's overall medical opinion is not rendered incompetent. *Price v. Broyhill Furniture*, 90 N.C. App. 224, 368 S.E.2d 1 (1988); *see also Perry*, 80 N.C. App. 650, 343 S.E.2d 215 (1986) (holding physician's testimony on cross-examination that employee's cigarette smoking was probably more significant contributing factor than his occupation did not invalidate conclusion that employee had compensable occupational disease). Further, our Supreme Court has recognized that the Commission is the fact-finding body in workers' compensation cases, and the scope of appellate review of questions of fact is limited. *Peoples* at 432, 342 S.E.2d at 803 (citing *Watkins v. City of Wilmington*, 290 N.C. 276, 225 S.E.2d 577 (1976)). "The authority to find facts necessary for an award is vested exclusively in the Commission." *Id.* (citing *Moore v. Electric Co.*, 259 N.C. 735, 131 S.E.2d 356 (1963)).

For the above reasons, we hold the Commission correctly concluded that plaintiff's employment with defendant significantly contributed to, or was a significant causal factor in plaintiff's occupational disease.

Affirmed.

Judges WYNN and HUNTER concur.

This opinion was concurred in by Judge Wynn prior to 1 October 1998.