Under appropriate circumstances, work-related depression or other mental illness may be a compensable occupational disease.See Jordan v. Central Piedmont Comm. College, 124 N.C. App. 112,476 S.E.2d 410 (1996). However, the claimant must prove that the mental illness or injury was due to stresses or conditions different from those borne by the general public. See Woody v.Thomasville Upholstery, Inc., 355 N.C. 483, 562 S.E.2d 422 (2002) (adopting dissent in 146 N.C. App. 187, 202, 552 S.E.2d 202, 211
(2001)). Thus, the claimant must establish both that his psychological illness is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment' and that it is not `an ordinary disease of life to which the general public is equally exposed.' Id. (citing toBooker v. Medical Center, 297 N.C. 458, 468, 256 S.E.2d 189, 196
(1979) (quoting N.C. Gen. Stat. § 97-53(13) (2001))).
The majority found that plaintiff's mental disorders were likely related to his duties as deputy sheriff for defendant, but failed to find that his mental disorders were occupational diseases under the Workers' Compensation Act because, according to the majority, there was insufficient evidence in which to find plaintiff's work put him at an increased risk of depression as compared to the general public. In doing so, the majority ignored the credible medical evidence of record establishing that plaintiff's mental disorders were a consequence of the high degree of emotional stress to which plaintiff was subjected, and thus his work placed plaintiff at an increased risk of developing a mental disorder as compared to the general public.
The evidence of record shows that plaintiff was exposed to a high degree of stress that exceeded what one would term as typical work-related stress. During the time plaintiff worked at the New Hanover County Jail, there were approximately 350 to 375 inmates in residence, when the facility is designed to accommodate only 280 inmates. The overcrowding of the jail caused an increase in violence and confrontation. During the course of plaintiff's employment deputy sheriff, plaintiff was the victim of a number of assaults involving physical altercations with inmates. The common dangers plaintiff experienced in the jail involved threats with razors and shanks, assaults by inmates upon each other and the jailers, thrown feces, urine, and spoiled milk, and heightened tension resulting from the enclosed environment. Additionally, there was increased tension and stress between the jail personnel members due to the high-stress environment. In addition to these stressors, plaintiff observed the suicide of an inmate, and also interrupted the hanging of another inmate. Eventually, plaintiff experienced such an acute degree of work-related stress that he regularly became physically sick and would throw up, and often dreaded coming to work. Plaintiff worked twelve hour shifts, with occasional overtime. Beginning in 1999, plaintiff would go to his commanding officer, Cpl. Christine Hart, to complain about the conditions in the jail, and would sit in her office and become upset. Over the years, plaintiff put in multiple transfer requests to get out of working in the jail.
Although the majority found there to be insufficient medical evidence in the form of physician testimony to show that plaintiff was at an increased risk of developing depression by virtue of his employment, the undersigned finds there to be sufficient evidence of the same. A review of the medical records of plaintiff's treating psychologist, Dr. William Koff, shows the Dr. Koff believed plaintiff's working conditions were a substantial contributing factor to plaintiff's disability. Moreover, plaintiff's psychotherapist, Ronald Knopf, LCSW, testified that plaintiff would not have suffered the debilitating depression from which he suffers were it not for his employment with defendant.
Though the majority did not find such medical evidence to be sufficient as proof of an increased risk, "there are many instances in which the facts in evidence are such that any layman of average intelligence and experience would know what caused the injuries complained of." Tickle v. Standard Insulating Co.,8 N.C. App. 5, 173 S.E.2d 491 (1970). In Tickle, the court found that expert medical testimony was unnecessary when plaintiff introduced evidence from which the trier of the facts might draw a reasonable inference that the particular injury of which he complained was the proximate result of the accident. Id. Thus, in the present case, even if there is a lack of expert testimony to show an increased risk, as the majority found, there is other competent, sufficient evidence that the high degree of emotional stress to which plaintiff was subjected at work placed him at an increased risk of developing a mental disorder as compared to the general public.
Further, it cannot be said that stressors in plaintiff's personal life did not contribute to his depression, yet it is clear from Dr. William and Mr. Knopf that absent plaintiff's work-related stressors, plaintiff would not have progressed to a severe depressive state. Moreover, N.C. Gen. Stat. § 97-53(13) does not require that the conditions of employment be the exclusive cause of an occupational disease in order to be compensable. Humphries v. Cone Mills Corporation,52 N.C. App. 612, 614, 279 S.E.2d 56, 58 (1981). Thus, just because plaintiff's depression can be related in part to personal stressors does not preclude compensation for plaintiff's occupational exposure to severe stress.
As the North Carolina Supreme Court stated in Johnson v.Asheville Hosiery, Co., 199 N.C. 38, 153 S.E. 591 (1930), the Worker's Compensation Act is to be liberally construed to effectuate the broad intent of the Act to provide compensation for employees sustaining an injury arising out of and in the course of the employment, and no technical or strained construction should be given to defeat this purpose. Id. The majority has erred in failing to award compensation to plaintiff, despite the credible evidence of record that it was work-related stress that placed him at an increased risk of developing a mental disorder as compared to the general public. For these reasons, I respectfully dissent from the majority's Opinion and Award in this matter.
This 4th day of August 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER