JAMES K. PERRY, EMPLOYEE, PLAINTIFF v. BURLINGTON INDUSTRIES, INC., EMPLOYER, AND AMERICAN MOTORISTS INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8510IC1112

(Filed 20 May 1986)

Master and Servant § 68— workers' compensation—occupational lung disease—exposure to cotton dust

Evidence was sufficient to support an award of workers' compensation for an occupational lung disease caused by exposure to cotton dust in the workplace, and expert medical testimony that plaintiff's cigarette smoking was "probably a more significant contributing factor than his occupation" did not compel the conclusion that plaintiff did not have a compensable occupational disease, since, so long as the employment significantly contributed to or was a significant causal factor in the disease's development, the occupational disease was compensable under N.C.G.S. § 97-53(13).

APPEAL by defendants from opinion and award of the North Carolina Industrial Commission filed 27 June 1985. Heard in the Court of Appeals 13 February 1986.

Plaintiff seeks workers' compensation for occupational lung disease allegedly caused by exposure to cotton dust in the workplace. The hearing commissioner found that plaintiff has experienced long-term exposure to causes and conditions which are characteristic of, and peculiar to, the cotton textile industry and which are known to result in chronic obstructive pulmonary disease, and that workers so exposed are at an increased risk over members of the general public of developing or accelerating chronic obstructive pulmonary diseases. She further found that plaintiff's occupational exposure to cotton dust was a significant causal factor in the development of his chronic obstructive pulmonary disease. She entered conclusions of law that plaintiff's disease is due to causes and conditions characteristic of and peculiar to the textile industry, is not an ordinary disease of life to which the general public is equally exposed, and is therefore an occupational disease. She further concluded that plaintiff is totally incapacitated for work and is entitled to workers' compensation.

The Full Commission adopted the decision of the hearing commissioner. Defendants appeal.

*Law Offices of Paul J. Michaels, P.A., by John Alan Jones,* for plaintiff appellee.

*Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan, Jr., and Caroline Hudson,* for defendant appellants.

WHICHARD, Judge.

Defendants contend the commission erred in finding and concluding that plaintiff is totally and permanently disabled as a result of a compensable occupational disease. We find sufficient evidence from which the commission could conclude that plaintiff suffers from an occupational disease.

> Appellate review of decisions of the Industrial Commission is limited to a determination of "whether there was competent evidence before the Commission to support its findings and . . . whether such findings support its legal conclusions." . . . This Court cannot substitute its judgment for that of the Commission. Thus, when supported by competent evidence, findings of fact made by the Commission are conclusive on appeal. . . . (Citations omitted.)

*Gay v. J. P. Stevens & Co., Inc.,* 79 N.C. App. 324, 325, 339 S.E. 2d 490, 491 (1986).

The evidence before the Commission, in pertinent part, tended to establish the following:

Plaintiff initially worked for defendant-employer for approximately four years as a weaver. He was then unemployed for an unspecified period, after which he again worked for defendant-employer as a loom fixer in its weave room from 4 June 1957 through 4 October 1983.

While the dust conditions in the weave room changed four or five years before plaintiff left the mill, during most of his employment the air in the room was "real dusty." Plaintiff testified: "It was like a fog in there sometimes." He further testified that as a loom fixer he worked "above, beside and under a loom," and that there "was lint under the looms a foot and a half or two foot deep—dust or whatever."

Before conditions improved plaintiff's clothes would have dust all over them by the end of a work shift. There were blowers

"*going* around [which] kept dust in the air all the time." Twice a week a man with an air hose blew off the looms. When that occurred the air in plaintiff's work area "would be real dusty." Plaintiff testified: "It would be like a snow where he was working."

Before he went to work for defendant-employer plaintiff had no breathing problems. By the time defendant-employer made the changes in the weave room plaintiff's breathing "was bad." He first noticed symptoms of a breathing problem twelve to fifteen years prior to the hearing on this claim. He would be in the plant working when he noticed these symptoms. By the end of a work shift he would "be in pretty bad shape." His chest would "tighten up" and he "couldn't halfway breathe." He could always breathe better when he was not in the plant, and his breathing was better during weekends and vacations.

In 1981 plaintiff went to Dr. Ted R. Kunstling about his breathing. He did not go of his own choice but was sent by defendant-employer. At that time plaintiff was less than fully candid in describing his condition to Dr. Kunstling because he was afraid he would lose his job if the doctor "found a lot wrong with [him]." When he subsequently returned after the doctor "had already taken [him] out of the plant," he "felt more free to talk to him." At that time Dr. Kunstling advised him that his breathing problems were work related.

Plaintiff can only walk "maybe a block" without having to stop to catch his breath. It is "about impossible" for him to climb stairs because he "give[s] out" of breath. He formerly had his own band but "got to where [he] couldn't do it." He no longer mows grass or rakes leaves at his home because he does not have the breath to do it.

The planning manager of the plant where plaintiff worked corroborated plaintiff's testimony about the dust conditions in the weave room prior to the changes that were made four or five years before plaintiff left the mill. He testified: "[T]here was dust out there. [Plaintiff's] testimony, based on what I saw, was accurate. . . . I don't quite agree with the amount of lint he said was under the loom. That's the only thing I'd have to disagree on." He further testified:

I am familiar with what a loom fixer does. In the course of his job, a loom fixer has to spend most of his time working around the loom or under the loom. He would have as dusty a job as anybody in the weave room. The dustiest, if he's working around or under the looms all the time.

Dr. Kunstling, a member and former chairman of the North Carolina Industrial Textile Occupational Disease Panel, testified that plaintiff suffered from "severe chronic obstructive pulmonary disease with elements of asthma, chronic bronchitis, emphysema, and probably byssinosis, caused and/or exacerbated by occupational exposure to cotton dust, cigarette smoking and respiratory infection; number two, chronic rhinosinusitis." He further testified, in response to a hypothetical question which encompassed facts stated above and others, that a person in plaintiff's employment situation was at greater risk of contracting chronic obstructive pulmonary disease than others without similar exposure. In his opinion plaintiff's occupation "did contribute significantly to his . . . chronic obstructive lung disease." He stated: "Under the AMA guidelines, it would appear that [plaintiff] would have Class IV respiratory impairment, that he would be totally disabled. Class IV is the most severe degree of impairment."

On cross-examination, when asked to assume that only fifteen percent of the material run in the weave room where plaintiff worked was cotton blends, and the other eighty-five percent was synthetics, Dr. Kunstling testified:

[G]iven that history my assumption is that that was a significant occupational exposure to cotton dust that did contribute to [plaintiff's] lung disease. . . . [M]y assumption is that whether you have 100 percent cotton or . . . cotton and synthetic blended together you're still processing the cotton in a similar fashion and therefore you are running the risk of creating a dangerous environment in terms of levels of cotton dust in the environment. . . . [E]ven considering all those things . . . I do feel that his environment, particularly during the earlier years of his employment, did contribute to the development of his current condition. . . . [E]ven though the work environment may now be relatively safe . . . [,] [h]e has

lung function impairment that . . . appears to me to be sufficiently severe that he is unable to perform the job.

Finally, plaintiff testified that he started smoking cigarettes when he was seventeen or eighteen years old and quit a little over a year prior to the hearing on this claim. He was fifty years old at the time of the hearing. He smoked "[m]aybe three-fourths of a pack [a day], something like that." Dr. Kunstling testified on cross-examination that plaintiff's "smoking [was] probably a more significant contributing factor than his occupation."

A disease is an occupational disease compensable under N.C. Gen. Stat. 97-53(13) if claimant's employment exposed him "to a greater risk of contracting this disease than members of the public generally . . ." and such exposure "significantly contributed to, or was a significant causal factor in, the disease's development." *Rutledge v. Tultex Corp.*, 308 N.C. 85, 101, 301 S.E. 2d 359, 369-70 (1983). Ultimately, the Commission must determine "whether the occupational exposure was such a significant factor in the disease's development that without it the disease would not have developed to such an extent that it caused the physical disability which resulted in claimant's incapacity for work." *Id.* at 102, 301 S.E. 2d at 370.

> [T]here are three elements necessary to prove the existence of a compensable "occupational disease": (1) the disease must be characteristic of a trade or occupation, (2) the disease [must not be] an ordinary disease of life to which the public is equally exposed outside of the employment, and (3) there must be proof of causation, *i.e.*, proof of a causal connection between the disease and the employment.

*Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E. 2d 101, 105-06 (1981), citing *Booker v. Medical Center*, 297 N.C. 458, 468, 475, 256 S.E. 2d 189, 196, 200 (1979).

The evidence, considered in light of the foregoing legal principles, is sufficient to support the Commission's findings that: plaintiff has experienced long-term exposure to causes and conditions which are characteristic of, and peculiar to, the cotton textile industry and which are known to result in chronic obstructive pulmonary disease; workers exposed long term to cotton dust in the textile industry generally are at an increased risk of developing or augmenting chronic obstructive pulmonary diseases than

are members of the general public; plaintiff's occupational exposure to cotton dust was a significant causal factor in the development of his chronic obstructive pulmonary disease; and plaintiff has been totally disabled as a result of his chronic obstructive pulmonary disease since he left defendant-employer's employment. These findings support the legal conclusion that plaintiff suffers from an occupational disease compensable under N.C. Gen. Stat. 97-53(13). There is ample evidence from which the Commission could conclude that plaintiff's work exposed him to a greater risk of contracting chronic obstructive pulmonary disease than members of the public generally and that occupational exposure substantially contributed to development of the disease. *Rutledge, supra.* The extent of cotton dust in plaintiff's work environment and its potentially harmful effect on the respiratory system were well established. Dr. Kunstling's testimony amply established the causal connection between plaintiff's disease and his work environment and that his occupation contributed significantly to his disease.

We find no merit in defendants' contention that Dr. Kunstling's cross-examination testimony that plaintiff's cigarette smoking was "probably a more significant contributing factor than his occupation" compels the conclusion that plaintiff does not have a compensable occupational disease. So long as the employment "significantly contributed to, or was *a* significant causal factor in, the disease's development," an occupational disease is compensable under N.C. Gen. Stat. 97-53(13). *Rutledge*, 308 N.C. at 101, 301 S.E. 2d at 369-70 (emphasis supplied). The evidence amply establishes that plaintiff's employment was *a* significant causal factor in the development of his disease.

Affirmed.

Judges WELLS and COZORT concur.