Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in an executed Pre-Trial Agreement as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Defendant-employer was an approved self-insured with Key Risk Management Services acting as its servicing agent at all relevant times herein.
4. Plaintiffs average weekly wages were $491.00 per week, yielding a compensation rate of $328.00 per week at all relevant times herein. Plaintiffs average weekly wages were stipulated to by both parties at the time of this hearing.
 ***********
Based upon all of the competent evidence adduced at the hearing and from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was a 46 year old woman at the time of the hearing before the Deputy Commissioner. She began working as a correction officer at Morrison Youth Institution in 1995.
2. Morrison Youth Institution is a unit of the North Carolina Department of Correction in which 18 to 25 year old inmates are housed.
3. Plaintiff was required to monitor all the actions of the inmates while on duty. This may include watching them as they shower, eat, exercise or any other activity in which the inmates may be involved. As a part of managing the inmates, plaintiff was required to break up fights on occasion. In the course of her employment, inmates offered all kinds of indignities to plaintiff, such as throwing urine, soap or rocks at her, masturbating in front of her or showing her their genitals. Plaintiff was required to assist with the security of the unit whether she was working the dorm or the yard. Plaintiff was also called upon to man the gun tower, and if an inmate attempted to escape while she was in the tower she was expected to shoot him to prevent his escape. Plaintiff was required to assist in the searches that were conducted of the dorms and lockers looking for weapons or contraband, and on occasion transport inmates outside of the unit. While working at the unit, plaintiff did not carry any firearms and only had pepper spray for protection.
4. Plaintiff was told prior to her accepting this position that she would be expected to work overtime and at times other than her normal shift when necessary. She was also told of the kinds of things the inmates may do in her presence or to her person.
5. On 21 November 1996, plaintiff had begun seeing a therapist at Womenfolk Unlimited for a number of stressors in her life. Plaintiff is divorced with two adult daughters. She was raising two of her three grandchildren, and believed the third grandchild to be living in a bad environment with her daughter, the childs mother. One of plaintiffs daughters was having problems with drugs and unable to care for her children. The other daughter was pregnant and living with her boyfriend. In addition, plaintiff was having problems in her relationship with her boyfriend. Also, she had had surgery for hemorrhoids in June 1997, with complications which had not been addressed or corrected, and required further treatment.
6. In October 1997, while plaintiff and another officer were at a service station getting gas, the other officer and plaintiffs car were set on fire by an ex-inmate. The ex-inmate walked up to plaintiffs car while the other officer was pumping gas into it and lit the end of the gas hose, burning the canopy of the car and the other officers hair and jacket. Plaintiff recalls the person as having being an inmate at Morrison Youth Institution.
7. Plaintiff did not believe that her co-workers or her supervisors supported her. She was told not to report incidents when inmates showed their genitals or masturbated in her presence, because either nothing would be done or some officers might physically retaliate against the inmate. Plaintiff reported some of these types of incidents to her supervisor; however, nothing was done and she was advised to keep quiet.
8. On 4 October 1997, plaintiff did not feel well when she arrived at work. She reported this to her supervisor and she was placed on duty in one of the towers. After being in the tower for a short period of time, her hands and body began to shake, she was having problems breathing, she began to cry and became disoriented. She called her supervisor and told her that she was not feeling well and needed to go home. Plaintiffs supervisor came to the tower with a complaint which had been filed against plaintiff by another officer for remarks plaintiff had made about that officers alleged illegitimate child. The supervisor required plaintiff to provide a written statement regarding the complaint before she would be permitted to leave. When plaintiff attempted to comply, the supervisor told plaintiff that her response was not satisfactory, and told her she had to rewrite it before she could leave. Plaintiff was eventually permitted to leave some hours later.
9. On 6 October 1997, plaintiff presented to the emergency room of Moore Regional Hospital. She was admitted to the psychiatric wing of the hospital where she was treated by Dr. Rodolfo Ongjoco, Jr., a psychiatrist. Dr. Ongjoco took a history of plaintiff where she described an onset of depression at age 16, which has continued on and off since that time. Dr. Ongjoco diagnosed plaintiffs condition as major depression without psychosis of a recurrent nature. Plaintiff told Dr. Ongjoco that she found it very stressful to work in the prison environment with the male prisoners behaving the way they do, with her having to carry a firearm, and due to the hours that were involved.
10. Dr. Ongjoco was of the opinion that plaintiffs position with defendant-employer was a contributing factor in her development of depression but was not the sole cause. Further, he did not state that plaintiffs job was a "significant contributing factor in the development of her depression. Dr. Ongjoco did not believe that plaintiffs position with defendant-employer placed her at an increased risk of developing depression as compared to individuals not similarly employed. Dr. Ongjoco felt that all jobs and the other experiences of life are stressful, and stress does not necessarily lead to depression.
11. Plaintiff was discharged from the hospital on 14 October 1997. Plaintiff indicated to Dr. Ongjoco that she liked her job with defendant-employer and wanted to return to it as soon as possible. On 18 November 1997, Dr. Ongjoco wrote plaintiff an out of work note which stated that she should be able to return to work on 24 November 1997; however, he also noted that plaintiff should not be at work for extended hours.
12. On 22 December 1997, plaintiff presented to psychologist Dr. John F. Warren, for an independent psychological evaluation. Dr. Warren agreed with the diagnosis of major depression and that plaintiffs position contributed to its development. He also agreed that plaintiffs position did not place her at an increased risk of developing depression over that faced by the general public. Dr. Warrens notes indicate that in discussing the incidents of her last day at work, plaintiff agreed that they were likely the result of her depression as opposed to the cause. Both Drs. Warren and Ongjoco were of the opinion that stress comes from many of the daily situations we encounter, some are going to be more stressful than others, but they do not generally cause depression.
13. At an initial interview for behavioral services, plaintiff told Evelyn Rider that she was seeking treatment for depression, relationship issues, constant crying and past surgical treatment. When plaintiff was asked what brought on this condition she indicated her surgery, decreased communication skills, rectal bleeding at stool, raising her granddaughters, her 19 year old pregnant daughter living with her boyfriend, emotional abuse from her boyfriend that she had just broken up with, and increased anxiety from a 25 year old (daughter) being involved in drugs. Plaintiff did not say anything about any stress she was experiencing as a result of her job with defendant-employer.
14. Plaintiff has failed to demonstrate a significant causal connection between her job with the Department of Corrections and her psychiatric condition. The greater weight of the evidence tends to show that there have been a number of stressors in plaintiffs life outside of her employment which caused her depression. Accordingly, it was plaintiffs depression that made the stresses of her job problematic, and not her job that caused the depression. Further, plaintiffs job did not place her at an increased risk of developing depression over that of the general public not so employed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not develop a compensable occupational disease as a result of her employment with defendant-employer. N.C. Gen. Stat. 97-2;97-53.
2. Plaintiff has failed to demonstrate a significant causal connection between her job and her psychiatric condition, or that her employment subjected her to an increased risk of contracting depression over that of the general public not so employed. See Perry v. Burlington Indus.,Inc., 80 N.C. App. 650, 343 S.E.2d 215 (1986).
3. Plaintiff has failed to prove by the greater weight of the evidence that she is entitled to receive any benefits under the North Carolina Workers Compensation Act; therefore her claim should be denied.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiffs claim for workers compensation benefits under the law must be and is hereby DENIED.
2. Each side shall bear their respective cost in this matter.
This the day of December, 2000.
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_________________ DIANNE C. SELLERS COMMISSIONER
S/__________________ RENE C. RIGGSBEE COMMISSIONER