The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young, the records contained in the Commission's file in this matter and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. Hartford Specialty Risk Services was the carrier on the risk at all relevant times.
4. The parties stipulated to an Industrial Commission Form 61, dated April 10, 1998.
5. The parties stipulated to the plaintiff's medical records from Duke University Medical Center and Department of Veterans Affairs.
6. The issues presented are:
 a) Whether the plaintiff contracted the occupational disease of bilateral carpal tunnel syndrome arising out of and in the course of his employment with the defendant-employer.
 b) Whether the plaintiff's occupational disease of bilateral carpal tunnel syndrome was aggravated as a result of his employment with the defendant-employer.
 c) Whether the plaintiff is entitled to any benefits under the North Carolina Workers' Compensation Act.
 ***********
Based upon all the evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 47 years old with an Associates Degree in Commercial Cooking.
2. Plaintiff's work history includes construction work, truck driving and commercial cooking.
3. Plaintiff began working for the defendant-employer as a laborer on August 25, 1997. His job duties included lifting bags of mortar weighing 70 pounds and bags of cement weighing 94 pounds. After emptying a bag of mortar into a mixer, plaintiff was then required to shovel at least 12 shovels of sand into the mixer. Then he had to shovel 15 shovels of screenings into the mixer for each bag of grout. He mixed 125 bags of cement and grout each day. He did this job without help on the first three days of work.
4. Plaintiff presented to the VA Hospital on September 7, 1997 and complained of ongoing bilateral hand pain and numbness, greatest at night. VA Hospital medical personnel diagnosed plaintiff with possible bilateral carpal tunnel syndrome.
5. Greg Argetsinger, plaintiff's supervisor and witness for the employer, testified that plaintiff had braces on both wrists on the third or fourth day that he showed up for work and that when he asked plaintiff about the braces plaintiff said it was a previous injury that the VA was treating. However, Argetsinger had written to Michelle Byrum with Pyramid Masonry that plaintiff "worked approximately 1 week before he complained about hands. He worked 2 more weeks before taking off four days, working 1 and taking off 4 more. At this time, he told me he was going to see the VA doctor for his hands." This note directly contradicted his testimony, which is found to be not credible.
6. Dr. Rainer Sachse, who was then a surgeon with the Veterans Administration hospital in Durham, performed carpal tunnel release on plaintiff's left hand on January 12, 1998, and on his right hand on January 27, 1998. It was Dr. Sachse's opinion, and the Full Commission finds as fact, that plaintiff's work with defendant-employer either caused his bilateral carpal tunnel or aggravated a pre-existing bilateral carpal tunnel condition, resulting in the inability of plaintiff to earn any wages for a period time. It was Dr. Sachse's further opinion, and the Full Commission finds as fact, that plaintiff's job with defendant-employer placed him at an increased risk of contracting carpal tunnel disease.
7. Defendants contended that plaintiff could not have contracted bilateral carpal tunnel disease after only three days of work. However, Dr. Sachse testified, and the Full Commission finds as fact, that plaintiff's mixing of up to 125 bags of cement and grout a day for the first three days of his work with defendant-employer either caused or aggravated bilateral carpal tunnel disease. Plaintiff's work with defendant-employer at was his last injurious exposure to this disease.
8. Greg Argetsinger's testimony that plaintiff advised him that he had hand and wrist problems pre-dating his employment with the defendant-employer is found not to be credible.
9. Plaintiff testified he could no longer perform his job duties due to the pain in his hands and that the defendant-employer subsequently laid him off from work. Plaintiff continued to receive medical treatment for his hand problem at the VA Hospital.
10. After plaintiff's recuperative period of five to six months plaintiff was unable to find employment at the light duty required by his condition.
11. Argetsinger testified that plaintiff was told when he was hired that the job was winding down and that the defendant-employer subsequently offered plaintiff a similar job at a new site at Elon College, which plaintiff declined.
12. Because of his compensable occupational disease, plaintiff was unable to earn any wages from September 17 to September 29, 1997 and from November 4, 1997 to November 1, 1998. On or about November 1, 1998, plaintiff returned to work preparing meals at Hardee's and then Biscuitville at an average weekly wage of $240.00 and later in March 1999 with Bojangles and Burger King, where plaintiff was employed at the time of the hearing before the Deputy Commissioner.
13. Plaintiff's average weekly wage with defendant-employer was $320.00, yielding a compensation rate of $213.33.
14. The Deputy Commissioner, who observed the witnesses first hand as did not the Full Commission panel, found the defense witnesses more credible because of demeanor and intonation. The Full Commission finds plaintiff's testimony fully corroborated by the medical records and the deposition testimony of Dr. Sachse, who was not observed by either the Deputy Commissioner or the Full Commission. Additionally, Greg Argetsinger's testimony was contradicted by his own note to Michelle Byrum.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff must prove three elements to establish existence of an occupational disease: (1) there must be proof of a causal connection between the disease and the employment, (2) the disease must be characteristic of a trade or occupation, and (3) the disease must not be an ordinary disease of life to which the public is equally exposed outside of employment. N.C. Gen. Stat. § 97-53(13). Perry v.Burlington Industries, Inc., 80 N.C. App. 650, 343 S.E.2d 215 (1986),citing Hansel v. Sherman Textiles, 304 N.C. App. 44, 283 S.E.2d 101
(1981). The burden of proving each and every element of compensability falls squarely on the plaintiff. Hansel, 304, N.C. App. At 54,283 S.E.2d at 106. Plaintiff has met this burden.
2. In the instant case, the evidence is sufficient to establish that the plaintiff's employment with the defendant-employer was causally related to plaintiff either contracting bilateral carpal tunnel syndrome or aggravating pre-existing bilateral carpal tunnel syndrome and, in any event, was plaintiff's last injurious exposure. Only the employer in whose employment claimant was last injuriously exposed to the hazards of the disease is liable for any disability resulting from the occupational disease. Jones v. Beaunit Corp., 72 N.C. App. 351, 353, 324 S.E.2d 624,625 (1985). The work-related injury need not be the sole cause of the problems to render an injury compensable. If the work-related accident or occupational disease contributed in some reasonable degree to plaintiff's disability, he is entitled compensation. Smith vs. ChampionInternational, 517 S.E.2d 164 (1999), Hoyle vs. Carolina AssociatedMills, 122 N.C. App. 467, 470 S.E.2d 357 (1996).
3. The competent evidence in the record establishes that the plaintiff's job duties with the defendant-employer either caused or aggravated his condition, making it disabling for the first time. The evidence also established that the job placed plaintiff at an increased risk.
4. Plaintiff is entitled to receive medical treatment for his occupational disease so long as said treatment should effectuate a cure, give relief or lessen plaintiff's period of disability. The persons and entities providing medical treatment to plaintiff for his occupational disease on and after September 7, 1997 are entitled to reimbursement from defendants pursuant to the North Carolina Industrial Commission Medical Fee Schedule. N.C. Gen. Stat. § 97-25.
5. Plaintiff is entitled to temporary total disability at the rate of $213.33 per week from September 17 to September 29, 1997 and from November 4, 1997 to November 1, 1998. Plaintiff is entitled to temporary partial disability for any period of reduced wages from November 1, 1998, through 300 weeks from September 17, 1997.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney fee awarded in paragraph 3 below, defendants shall pay to plaintiff temporary total disability benefits at the rate of $213.33 per week from September 17 to September 29, 1997 and from November 4, 1997 to November 1, 1998 and temporary partial benefits from November 1, 1998 until the first to occur of weekly earnings at the same or higher rate than his average weekly wage at defendant-employer or 300 weeks from September 7, 1997. All accrued benefits shall be paid forthwith in one lump sum with interest at 8% per year.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable occupational disease and, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. An attorneys fee of twenty-five percent (25%) of the compensation due plaintiff herein is hereby awarded to plaintiffs counsel as reasonable attorneys fees. Defendants shall pay this fee with respect to the lump sum directly to plaintiff's counsel forthwith. Thereafter, defendants shall pay every fourth weekly check directly to plaintiff's counsel.
4. Defendants shall pay the costs of this action.
This 21st day of May 2001.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER