***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner and in an executed pretrial agreement dated March 27, 2000, and by means of post-hearing agreements as
 STIPULATIONS
1. On February 4, 1998, the first date of disability resulting from the alleged occupational disease giving rise hereto, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On said occasion, the employee/employer relationship existed between the plaintiff and the employer with the employer being insured with Wausau Insurance.
3. On said occasion, plaintiff's average weekly wage was $576.92 with a corresponding compensation rate of $384.63.
4. All Industrial Commission forms are entered into evidence by stipulation of the parties.
5. Plaintiff's employment records identified as documents numbered 001 through 362 are entered into evidence by stipulation of the parties.
6. A packet of medical records and reports which are identified as Stipulated Exhibit number 1 are received into evidence by stipulation of the parties.
7. Plaintiff's contested issues are as follows:
 (a) Whether plaintiff has sustained a compensable occupational disease as a result of his employment with defendant-employer, and if so, what are the compensable consequences thereof?
 (b) Whether plaintiff has sustained a workplace aggravation of a non-occupational disease which has resulted in disability, and if so, what are the compensable consequences thereof?
 ***********
Based upon all the competent, credible evidence adduced at the evidentiary hearing and through the post hearing medical, expert, and lay depositions, and the reasonable inferences drawn therefrom, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the evidentiary hearing plaintiff was 63 years of age, with a 24-year history of employment with defendant-employer for whom he last worked on February 4, 1998.
2. In April of 1997, plaintiff began work as a Quality Assurance Inspector in the finishing room. His job duties consisted of checking products coming out of a spray booth line for color consistency and defects.
3. Plaintiff's workstation consisted of a podium situated between the flatline-sealer sander line and spray booth number 10, which were both located on opposite sides of plaintiff by approximately 20 feet in distance.
4. In the Fall of 1997, plaintiff began to experience breathing problems and congestion for which he sought medical treatment from his personal physician, Dr. Campbell. Based upon his working diagnosis of pneumonia with a COPD component, plaintiff was treated conservatively by means of medication. As a result of this condition, plaintiff was out of work from November 22, 1997 to December 15, 1997.
5. Plaintiff returned to work on December 15, 1997 and worked as a quality control inspector until February 4, 1998. At his December 26, 1997 follow-up examination at Weaverville Family Medicine, plaintiff had no symptoms of coughing, wheezing, or headaches. His chest was clear and his pneumonia had resolved. Again on January 8, 1998, plaintiff's lungs were clear and he had no crackles or wheezing. On February 2, 1998, plaintiff reported to his treating physician assistant that he had been tired and weak since his pneumonia, but he could not relate his tiredness to any time of day or any specific activity. He also reported that chemicals used in the workplace may be irritating him. Plaintiff's lungs were clear with no crackles or wheezes noted, but he did have a persistent cough.
6. On February 5, 1998, plaintiff returned to the physician assistant complaining that the lacquer odors and dust at work seemed to aggravate his cough. Plaintiff was taken out of work by the physician assistant. Dr. Campbell referred plaintiff to a pulmonary disease specialist for evaluation of his breathing problems.
7. Plaintiff began treating with Dr. David Troxler, a physician at Asheville Pulmonary Critical Care on February 19, 1998. At his initial visit, Dr. Troxler performed a spirometry exam on plaintiff which he interpreted as indicating a mild obstructive ventilatory impairment consistent with asthma or chronic bronchitis.
8. Plaintiff's chronic obstructive pulmonary disease predated his February, 1998 diagnosis by Dr. Troxler. Plaintiff smoked cigarettes from the 1960s to 1994. In July, 1982, he was diagnosed with early chronic obstructive pulmonary disease.
9. On August 7, 1986, plaintiff was diagnosed with moderately severe obstructive airways disease based on a spirometry exam which showed low lung capacity and low lung force.
10. During the period from June 28, 1991 through March 16, 1992, plaintiff was diagnosed with an exacerbation of chronic obstructive pulmonary disease and was treated with various medications.
11. At his initial visit with Dr. Troxler on February 19, 1998, plaintiff reported that his current breathing problems began in the Fall of 1997, that he had been a one-pack-per-day cigarette smoker, that he had been exposed to a moderate amount of asbestos while in the navy from 1955-1959 and that his recent work exposed him to a lot of dust and lacquer odors. Plaintiff did not tell Dr. Troxler that he had previously had spirometry exams and had been previously diagnosed with chronic obstructive pulmonary disease. Based on the history given to him by plaintiff, his spirometry exam, and further examination, Dr. Troxler diagnosed plaintiff with mild to moderate chronic obstructive pulmonary disease, with possible asthmatic component and possible occupational exposure to bronchial irritants and a suspicion of asbestos-related plural disease. Dr. Troxler was of the opinion that the initial onset of plaintiff's illness seemed to be, at least, temporally and circumstantially related to exposure at work based on the history provided by plaintiff. Dr. Troxler recommended that defendant-employer assign plaintiff job duties where he would not be directly exposed to dust from sanding blown in his direction.
12. Plaintiff's job with defendant-employer required him to inspect desks after they had been colored to make sure the colors matched the color panel. Plaintiff did not sand furniture or apply lacquer. Plaintiff alleges that dust from sanding was blown on him by employees using air hoses in a sanding booth approximately 20 feet away and that he was exposed to chemical irritants when employees who worked in a spray booth 20 feet away sprayed furniture outside of the booth.
13. Based on the greater weight of the evidence, plaintiff was not exposed to harmful levels of lacquer dust or chemical compounds used in the staining, coloring and finishing of office furniture while working for defendant-employer. Plaintiff was 20 feet away from booths where sanding and spraying took place, the blowers used by sanders had pressure or force comparable to a hair dryer; defendant-employer's air quality audits in 1995 and 1997 which tested for the presence of several organic compounds and vapors in the two booths nearest plaintiff indicated that all of the compounds tested were present in amounts far below the allowable threshold limit values (TLV); an industrial hygiene audit in December, 1999 which tested air quality in the two booths nearest plaintiff and the area where plaintiff worked showed that none of the compounds tested approached more than 5% of the threshold limit values; an April 3, 2000 sampling of organic solvent and total dust in the area where plaintiff worked during periods where sanding and spraying took place at the same or greater frequencies than when plaintiff worked, found no detectable organic solvents present in the area where plaintiff worked and dust levels well below the OSHA permissible exposure limits. The TLV is a time weighted average concentration for a normal 8 hour day or 40 hour work week to which all workers may be repeatedly exposed without adverse effect. The TLV is set by the American Conference of Governmental Industrial Hygienist.
14. Even though furniture was occasionally sprayed outside of booths, there is insufficient evidence to support a finding that occasional exposure to higher than usual concentrations of the chemicals sprayed would be sufficient to cause chronic obstructive pulmonary disease, or to significantly aggravate plaintiff's pre-existing chronic obstructive pulmonary disease and breathing problems.
15. Greater weight is given to the opinion testimony of Dr. Philip Bromberg, a professor of medicine at UNC School of Medicine and Director of the Center for Environmental Medicine and Lung Biology who is board certified in Internal Medicine and in Pulmonary Diseases. He was of the opinion that in February, 1998, plaintiff suffered from stable, mild obstructive lung disease and unexplained, severe shortness of breath; that plaintiff's condition was not caused by his work environment with defendant-employer; that it is unlikely that plaintiff's chronic obstructive pulmonary disease could or might have been aggravated by his employment and that it is unlikely that plaintiff suffered from industrial bronchitis. He based his opinion in part, on the fact that plaintiff's 1986 spirometry exam which resulted in a diagnosis of moderate-to-severe chronic obstructive pulmonary disease was "essentially identical" to his February 19, 1998 spirometry exam. He also considered other medical records of plaintiff, defendants' industrial hygiene audits and a couple of Material Safety Data Sheets.
16. Both Dr. Troxler and Dr. Bromberg were of the opinion that plaintiff's moderate chronic obstructive pulmonary disease was more than likely primarily related to cigarette smoking.
17. Little weight is given to Dr. Troxler's opinion testimony on causation and increased risk. Dr. Troxler based his opinion on the incorrect assumption that plaintiff was frequently exposed to greater than normal amounts of lacquer dust and chemical irritants while working for defendant-employer. He also assumed that the onset of plaintiff's chronic obstructive pulmonary disease was probably the Fall of 1997; however, plaintiff's condition had been diagnosed as early as 1982 and again in 1986. Based on the greater weight of the evidence, the Commission finds that plaintiff was occasionally exposed to chemicals sprayed outside of booths, but the evidence is insufficient to establish that plaintiff was exposed to high enough levels of lacquer dust, chemical compounds and vapors in his employment to cause or significantly aggravate his chronic obstructive pulmonary disease and other breathing problems.
18. There is also insufficient evidence to support a finding that plaintiff's chronic obstructive pulmonary disease caused disablement from work. Plaintiff's chronic obstructive pulmonary disease is essentially the same as it was in 1986. Although Dr. Troxler took plaintiff out of work based upon an incorrect assumption that he was exposed to harmful levels of lacquer dust and chemical irritants at work; Dr. Troxler did not remove plaintiff from all work. If plaintiff's breathing problems caused disablement from work, there is insufficient evidence from which to prove that his breathing problems are work related. Therefore, plaintiff has not proven disablement due to an occupational disease. Also, plaintiff's employment did not increase his risk of aggravating his pre-existing chronic obstructive pulmonary disease.
19. Plaintiff has not proven by the greater weight of the evidence that he has contracted a compensable occupational disease.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. In order for a disease to be compensable as an occupational disease under N.C. Gen. Stat. § 97-53(13), it must be shown that the disease was due to causes and conditions characteristic of and peculiar to the employment and that the employment placed the worker at a greater risk than the general public of contracting the disease. Booker v. DukeMedical Center, 279 N.C. 458, 472, 256 S.E.2d 189, 198 (1979). Three elements are required to prove a compensable occupational disease: (1) the disease must be characteristic of a trade or occupation; (2) the disease [must not be] an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation, that is, proof of a causal connection between the disease and the employment. Perry v. Burlington Industries, Inc., 80 N.C. App. 650,343 S.E.2d 215 (1986). Plaintiff's evidence fails to meet this burden.
2. Plaintiff has not proven that he has contracted an occupational disease under N.C. Gen. Stat. § 97-53(13) as a result of his employment with defendant-employer.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission enters the following
 AWARD
1. Plaintiff's claim for compensation is DENIED.
2. Each side shall pay its own costs.
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_________________ DIANNE C. SELLERS COMMISSIONER
 S/________________ LAURA K. MAVRETIC COMMISSIONER
BSB:md