***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger, and the briefs and oral arguments before the Full Commission as well as interrogatories submitted to Dr. B. Keith Forgy by the Full Commission after oral argument. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The parties to this action are subject to and bound by the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between plaintiff and SGL Carbon.
4. The carrier liable on the risk is correctly named.
5. Plaintiff's average weekly wage is $454.77.
6. At the hearing before the Deputy Commissioner, the parties submitted the following documents, which were each admitted into evidence:
a. A Material Safety Data Sheet, marked as Stipulated Exhibit 2;
b. A set of medical records, marked as Stipulated Exhibit 3;
 c. A set of medical records from Dr. Shah-Khan, marked as Stipulated Exhibit 4; and,
 d. A set of out-of-work letters prepared by Dr. Shah-Khan, marked as Stipulated Exhibit 6.
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 39 years old, and employed by SGL Carbon as a utility person in its finishing department.
2 Plaintiff's job duties with SGL Carbon required him to regularly be exposed to coal tar pitch. Most notably, the skin on plaintiff's right forearm was exposed to prolonged and repeated contact with coal tar pitch.
3. Over the 13-year period that plaintiff worked for SGL Carbon, plaintiff sustained repeated burns by contact with the coal tar pitch. When the coal tar pitch struck plaintiff's skin, it would cause minor blisters.
4. As a result of plaintiff's prolonged and repeated contact with coal tar pitch, plaintiff eventually developed gray, wart-like lesions, most notably on his right arm where the burn blisters had occurred. There is no evidence that plaintiff was ever provided with protective gear to prevent his exposure to coal tar pitch at any time prior to having his lesions removed.
5. Plaintiff did not report to his supervisor each time that he was burned. However, the Full Commission finds that SGL Carbon was aware of plaintiff's exposure to coal tar pitch and the likelihood for repeated burns to occur. Additionally, SGL Carbon was aware that coal tar pitch has a propensity to cause potentially cancerous lesions, and that Plaintiff had developed lesions on his exposed right arm. See Material Safety Data Sheet, Stipulated Exhibit 2. Thus, the Full Commission finds that it would have been impractical and futile for plaintiff to report each and every burn to his supervisor given SGL Carbon's knowledge of plaintiff's ongoing exposure to coal tar pitch and the frequency of burns from such exposure.
6. On one occasion, plaintiff spoke to Debbie Williams, SGL Carbon's nurse, about seeing a medical doctor as a result of his developing lesions. Ms. Williams scheduled an appointment for plaintiff to a see a dermatologist in Asheville, but plaintiff was unable to make the appointment because defendant required him to work four hours overtime on that particular day.
7. On July 22, 1999, Dr. Sardar M. Shah-Khan, plaintiff's internist, wrote plaintiff out of work indefinitely on short-term disability for acute stress resulting from marital problems unrelated to plaintiff's employment. While plaintiff was out on such disability, plaintiff's wife phoned Nurse Williams to have plaintiff referred to a dermatologist once more. Nurse Williams stated she would not do so because plaintiff was out on leave and told Mrs. Brackett to have plaintiff's internist refer him to a specialist. Dr. Shah-Khan referred plaintiff to Dr. B. Keith Forgy, a general surgeon, to have plaintiff's lesions examined for removal.
8. On October 10, 1999, Dr. B. Keith Forgy, surgically removed a series of cutaneous lesions on plaintiff's right forearm, face, neck, trunk, left arm, foot, and back. Fifty-four lesions were removed in all, with almost half (twenty-five) taken from plaintiff's right arm. Dr. Forgy did not write plaintiff out of work because plaintiff was already out of work for marital problems. Dr. Forgy testified that plaintiff would have needed to be out of work for 7-10 days to avoid exposing his wounds to contaminants until they healed. After such time, plaintiff would have been able to return to normal work activity.
9. Within days of surgery, plaintiff's wounds on his hands and arms became infected and inflamed. On October 14, 1999, plaintiff saw Dr. Shah-Khan, who prescribed an oral antibiotic and an antibiotic cream for the infection and inflammation, and advised plaintiff to keep the wounds clean and dry. Dr. Shah-Khan continued to restrict plaintiff from returning to work because of his continuing marital problems, but noted secondarily in his notes dated October 21, and November 29, 1999, that plaintiff had "multiple skin lesions removed." Dr. Shah-Khan released plaintiff to return to work without restrictions on November 29, 1999, when plaintiff was fully healed. The Full Commission finds that plaintiff was unable to return to work until November 29, 1999, because plaintiff's wounds were infected. Plaintiff testified that in order to keep his wounds clean and dry to avoid additional infection, as instructed by Dr. Shah-Khan, plaintiff could not work in the dirty environment of his job. At the end of a shift, plaintiff would be heavily soiled with contaminants and would need to shower, which would have been impossible given his wounds. In a letter from Dr. Shah-Khan dated December 13, 1999, in which Dr. Shah-Khan details the reasons for plaintiff's disability leave, it is apparent that although Dr. Shah-Khan initially took plaintiff out of work for marital problems, plaintiff's return to work was dependant on his recovery from the infected surgical wounds. Thus, the Full Commission finds that plaintiff sustained temporary total disability from the date of his surgery on October 10, 1999, to November 29, 1999, when plaintiff's surgical wounds had fully healed and Dr. Shah-Khan released plaintiff to return to work.
10. Upon returning to work on or about December 2, 1999, SGL Carbon terminated the plaintiff over a dispute as to whether plaintiff had engaged in secondary employment activities while receiving short-term disability compensation due to his marital problems. Through a grievance process with defendant, plaintiff was able to show that he was merely helping his wife with her job and was, in fact, not paid for his services. Defendant reinstated plaintiff's position. Thus, the Full Commission finds that plaintiff's termination was unrelated to his claim for worker's compensation.
11. Dr. Dorwyn W. Croom II, M.D, was the pathologist who examined the lesions that were surgically removed from plaintiff's body. The surgical pathology report of Dr. Croom, dated October 12, 1999, details the pathology of the lesions removed from plaintiff's body. A good majority of the lesions located on areas other than plaintiff's right arm were classified as intradermal nevi, which are benign moles. However, the pathology report shows that the lesions concentrated on plaintiffs arm were of a different nature. These lesions were largely classified as seborreheic keratoses, which are the gray, wart-like growths that plaintiff developed on his right arm. Multiple occurrences of seborreheic keratoses were on plaintiff's right arm, with the exception of only two others found on plaintiff's neck and upper chest. Given this fact, the Full Commission finds a causal link between plaintiff's predominantly right arm exposure to tar pitch and his development of multiple seborreheic keratoses lesions on that arm.
12. Defendant deposed Dr. Steven St. Clare, who is board certified in occupational medicine. Dr. St. Clare never examined plaintiff, but reviewed plaintiff's medical records as provided to him by defendant. Dr. St. Clare testified that coal tar pitch exposure has been associated with the development of seborrheic keratoses. However, Dr. St. Clare opined that seborrheic keratoses are common amongst the general population. While the Full Commission does not dispute the commonality of seborrheic keratoses amongst the general population, given that such lesions are associated with coal tar pitch, and that plaintiff had an unusually high concentration on his right arm, the Commission finds that plaintiff's exposure to coal tar pitch caused him to develop seborreheic keratoses on that arm.
13. Dr. Forgy opined, and the Full Commission finds as fact, that the lesions on plaintiff's right arm more likely than not were caused by or related to his exposure to coal tar pitch "because of the marked concentration of lesions on plaintiff's right arm and because of his history of exposure to tar coal pitch primarily to his right arm at work." Additionally, Dr. Forgy opined, and the Full Commission finds as fact, "that [plaintiff's] exposure to coal tar pitch increased the likelihood of development of skin lesions over that of the general population."
14. In explaining the two other occurrences of seborrheic keratoses on the plaintiff's neck and upper chest, Dr. Forgy opined, and the Full Commission finds as fact, that "those lesions were on areas of skin that are usually exposed and could well have come into contact with coal tar pitch as well." Defendants contend that plaintiff's own testimony regarding his exposure to coal tar pitch contradicts this finding, because plaintiff testified that he suffered burns only on his right arm. However, the Full Commission finds that this statement made by plaintiff addresses only the burns he received and not his exposure to coal tar pitch as a whole. Plaintiff's neck and upper chest, as Dr. Forgy opined, could likely have been exposed to coal tar pitch just as easily as plaintiff's right arm, as opposed to typically covered areas such as plaintiff's foot or back. Moreover, as stated supra, the unusually high concentration of seborrheic keratoses on plaintiff's right arm, where he received the greatest exposure to coal tar pitch, leads to the reasonable conclusion that the coal tar pitch caused the seborrheic keratoses.
15. The Deputy Commissioner who examined plaintiff at hearing noted that the surgical scars on plaintiff's right forearm are not repulsive. The Full Commission also examined plaintiff upon appeal, and finds that the October 10, 1999, surgery to remove seborrheic keratoses lesions from plaintiff's body has not caused him serious bodily disfigurement, a diminished wage earning capacity, or continuing disability at this time. However, the skin is an important external organ that has been damaged by industrial exposure to coal tar pitch. Such damage includes pre-cancerous lesions. The Full Commission finds that $5,000.00 is an appropriate remedy for the damage to plaintiff's skin at this particular stage. Should there be a change of condition within the statutory time limit, plaintiff is free to seek further compensation.
16. Plaintiff's average weekly wage, as stipulated to by the parties, was $454.77, yielding a compensation rate of $303.18.
17. Plaintiff received some short term disability payments from a plan wholly funded by his employer.
18. Because of the nature of coal tar pitch exposure, plaintiff is likely to require medical attention for some time into the future.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown by the greater weight of the evidence that he developed seborrheic keratoses lesions, a dermatological condition and occupational disease, as a consequence of his exposure to coal tar pitch while employed with SGL Carbon. N.C. Gen. Stat. § 97-53(13). A disease is an occupational disease compensable under the Workers' Compensation Act if the following conditions are met: (1) the claimant's employment exposed him to a greater risk of contracting the disease than members of the general public; and (2) such exposure significantly contributed to, or was a significant causal factor in, the disease's development. Perry v. Burlington Indus., Inc., 80 N.C. App. 650,343 S.E.2d 215 (1986). In the present case, the evidence of record, including the testimony of Dr. Forgy through interrogatories, shows that plaintiff's employment with SGL Carbon exposed him to a greater risk of developing seborrheic keratoses lesions than members of the general public, and that such exposure contributed to the development of the lesions. See Id.
2. Plaintiff sustained temporary total disability from the date of his surgery to remove the seborrheic keratoses lesions from his body on October 10, 1999, to November 29, 1999, when plaintiff's surgical wounds had fully healed and he was released by Dr. Shah-Khan to return to work. Plaintiff is due compensation for this period of temporary total disability. N.C. Gen. Stat. § 97-29. Defendants are due credit for disability payments made during this same period. N.C. Gen. Stat. §97-42.
3. Plaintiff is due medical compensation as was or may be reasonably required to effect a cure, give relief, or lessen plaintiff's disability. Plaintiff is likely to require medical attention as a result of his industrial exposure to coal tar pitch for some time into the future. N.C. Gen. Stat. §§ 97-2(19), 97-25 and 97-25.1.
4. Plaintiff is entitled to an award of $5,000.00 against defendants for damage to his skin, an important external organ. N.C. Gen. Stat. § 97-31(24).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $303.18 per week for the period of October 10, 1999, to November 29, 1999. Because this amount has accrued, defendants shall make payment to plaintiff in a lump sum. Defendants are entitled to a credit for disability paid during this same period pursuant to an employer-funded plan.
2. Defendants shall pay for plaintiff's medical treatment as was or may be reasonably required to effect a cure, give relief, or lessen plaintiff's disability.
3. Defendants shall pay costs, including payment of an expert witness fee of $210.00 to Dr. Steven St. Clair, and $375.00 to Dr. B. Keith Forgy.
4. Defendants shall pay $5,000.00 to plaintiff for damage to his skin. Interest is due on this amount at the rate of 8 percent per year from May 23, 2001.
This the 19th day of March 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN