***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in the pre-trial agreement as:
 STIPULATIONS
1. The parties were subject to the North Carolina Workers' Compensation Act at all times relevant hereto, defendant-employer employing the requisite number of employees to be bound under the provisions of said Act.
2. It is stipulated that the employee/employer relationship existed at all times relevant hereto.
3. Electric Insurance Company is the carrier on the risk.
4. The employee's average weekly wage was $1,054.08.
5. The depositions of Dr. John W. Cromer, Jr., Dr. James H. Pridgen, and Dr. Richard S. Bahner were submitted and received into evidence. Records from an independent medical exam with Dr. Krakauer and a subsequent arthrogram were also submitted and received into evidence. (Stip. Exh. 3).
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On September 5, 2001, plaintiff worked as a machine operator for defendant-employer in Wilmington. In September 2001 plaintiff worked in the nuclear division of defendant-employer. His job duties as a machine operator included setting up, operating, interpreting, checking with measuring devices, precise indicating, maintaining records and logs, deburring, and cleaning the work area. All of plaintiff's job activities required different uses of his hands, and were not the same on a regular basis. The job duty of indicating a part component required plaintiff to use instruments to align the machine so that the cut is perfect, requiring him to loosen and tighten bolts.
2. In addition to his employment with GE, plaintiff also worked as a producer for RDM Music, a business he started in the mid-1990's. In his capacity as a producer with RDM, plaintiff used many types of musical equipment, including keyboards, a digital workstation, recorders, controllers, mixers, drum machines, etc. He described using his hands in operating all of these machines.
3. On September 5, 2001, plaintiff worked on two vertical lathe machines (VTL's) at defendant-employer. The process of setting up the VTL took about two hours, and in the meantime, plaintiff conducted other tasks while the lathe parts were being cut. At the time plaintiff was working on the VTL, he used a ratchet with a magnetic device attached to the end of it, a rubber mallet, and an Allen wrench. Plaintiff had previously used all of these tools on a routine basis.
4. Plaintiff testified that on September 5, 2001, as he was indicating a part using a four jaw chuck (to a ratchet), he felt a light snap and pain in his left wrist while aligning the part. The pain began while he was rotating the ratchet. After plaintiff felt the pain in his wrist on September 5, 2001, he reported the pain to his supervisor, Dave Berger, and went to defendant-employers clinic to report his incident to the nurse on staff. He received treatment and was also to follow up with Dr. Cromer, the on-site physician, shortly thereafter. He returned to work in the same job and described that he continued to have problems with his left wrist while performing his main job duties. Plaintiff had not experienced problems with his left hand prior to September 5, 2001, nor had he sought medical treatment for his left hand prior to that date.
5. On September 20, 2001, plaintiff returned to defendant-employer's clinic complaining of pain in his right arm and elbow because he claimed he was over-using his right arm to compensate for his left wrist problems. Plaintiff said he had never had pain in his right elbow before September 5, 2001.
6. Plaintiff continued to treat with Dr. Cromer at defendant-employer's medical clinic throughout the remainder of 2001. At his deposition and after plaintiff was diagnosed with carpal tunnel syndrome, Dr. Cromer said plaintiff's job duties as a machine operator are not the kinds of duties that would cause cumulative trauma disorders. Dr. Cromer stated that plaintiff's job duties did not place him at an increased risk of developing carpal tunnel syndrome or any other cumulative trauma disorder as compared to the general public not so employed. Plaintiff had worked regular duty until that date. Dr. Cromer then referred plaintiff to Dr. Moore, an orthopedist, who saw plaintiff on January 24, 2002. Dr. Moore ordered an MRI to plaintiff's wrist at that time, and the results were normal. Dr. Moore assigned work restrictions on March 22, 2002, where plaintiff was to work four hours per day. Plaintiff received short-term disability benefits for the difference in pay.
7. Plaintiff then treated with his family doctor, Dr. Pridgen, for his right arm. Dr Pridgen referred him to Dr. Bahner, another orthopedist in Wilmington. Dr. Bahner first saw plaintiff on April 11, 2002, and reported that plaintiff mostly complained of right arm problems, and not problems with the left wrist. He diagnosed plaintiff with right lateral epicondylitis. Plaintiff underwent physical therapy at Wilmington Physical Therapy, but did not desire to treat with cortisone shots or surgery. On June 20, 2002, Dr. Bahner released plaintiff without restrictions with respect to the right arm. At the hearing before the deputy commissioner, plaintiff testified that his right arm pain had resolved.
8. Plaintiff went out of work on April 2, 2002 until June 27, 2002 and received short-term disability benefits in the amount of $475.00 per week during that time period.
9. Dr. Bahner next treated plaintiff on December 30, 2002, this time reporting problems with his left wrist. Dr. Bahner ordered a second MRI to plaintiff's wrist on April 1, 2003, which was normal. An EMG was performed on April 7, 2003, which revealed "mild to minimal carpal tunnel syndrome on the left, and mild to minimal ulnar neuropathy localized to the wrist on the left." In July 2003, Dr. Bahner recommended an FCE, and after reviewing the results, informed plaintiff that he was able to work full time, full duty.
10. Following an independent medical examination with Dr. Krakauer on May 14, 2004 where there was some concern about a TFC tear, plaintiff underwent an arthrogram to the left wrist to detect problems with the ligaments of the left wrist on August 4, 2004. The arthrogram results were normal. Dr. Bahner opined that plaintiff's medical history, MRI, EMG, arthrogram, and FCE did not suggest that his left carpal tunnel syndrome was brought on by a single specific event in September 2001. He then unequivocally concluded that plaintiff's left carpal tunnel syndrome was not causally related to his September 5, 2001 incident at work. Dr. Bahner also testified that plaintiff's right lateral epicondylitis was not causally related to the incident at work either on September 5, 2001 or September 20, 2001. Dr. Bahner also opined that there was no reason why plaintiff would have been medically unable to work full-time, full duty, in the one-year interim between July 31, 2003 and July 27, 2004, the date of plaintiff's last visit with Dr. Bahner.
11. The Full Commission has considered the testimony of Dr. Bahner and Dr. Cromer and gives greater weight to their medical opinions as to the cause of plaintiff's left carpal tunnel syndrome.
12. The Full Commission finds that based upon the foregoing, plaintiff did not suffer an injury by accident to his left wrist on September 5, 2001.
13. The Full Commission also finds that based upon the greater weight of the medical evidence, plaintiff's left carpal tunnel syndrome is not causally related to plaintiff's September 5, 2001 incident at work.
14. The Full Commission also finds that based upon the greater weight of the medical evidence, plaintiff's right lateral epicondylitis is not causally related to any incident occurring at work with defendant-employer, either on September 5, 2001 or September 20, 2001.
15. Based upon the greater weight of the evidence, the Full Commission finds that plaintiff was not disabled as of his July 31, 2003 release to return to work without restrictions by Dr. Bahner.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that he sustained a compensable injury by accident to his left wrist arising out of and in the course of his employment with defendant-employer on September 5, 2001. Plaintiff's right lateral epicondylitis allegedly arising as a direct and natural consequence of overuse to compensate for the left wrist injury is likewise not compensable because the underlying left wrist injury is not compensable. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to meet his burden of proving that his left carpal tunnel syndrome is causally related to his incident at work on September 5, 2001. As plaintiff has failed to prove his job duties caused his left carpal tunnel syndrome, and as plaintiff has failed to prove his employment increased his risk of developing carpal tunnel syndrome as compared to the general public not so employed, plaintiff has failed to prove that his left carpal tunnel syndrome is an occupational disease. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tultex Corp./Kings Yarn,308 N.C. 85, 301 S.E.2d 359 (1983); Booker v. Duke Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979); Duncan v. City of Charlotte,234 N.C. 86, 66 S.E.2d 22 (1951); Perry v. Burlington Indus., Inc.,80 N.C. App. 650, 343 S.E.2d 215 (1986). Plaintiff is therefore not entitled to medical treatment under the Workers' Compensation Act for his left carpal tunnel syndrome.
3. Plaintiff's employment does not place him at an increased risk of contracting carpal tunnel syndrome as compared to the general public not so employed. As such, he is not entitled to workers' compensation benefits for aggravation of any pre-existing carpal tunnel syndrome as an occupational disease. Hobbs v. Clean Control Corp., 154 N.C. App. 433, 440,571 S.E.2d 860, 864 (2002).
4. As plaintiff has failed to show that his job duties caused his lateral epicondylitis, and has failed to show that his employment poses an increased risk to plaintiff of developing epicondylitis as compared to the general public not so employed, he failed to prove that his right lateral epicondylitis is an occupational disease. N.C. Gen. Stat. §97-53(13); Rutledge v. Tultex Corp./Kings Yarn, 308 N.C. 85, 301 S.E.2d 359
(1983); Booker v. Duke Medical Center, 297 N.C. 458, 256 S.E.2d 189
(1979); Perry v. Burlington Indus., Inc., 80 N.C. App. 650, 343 S.E.2d 215
(1986); Duncan v. City of Charlotte, 234 N.C. 86, 66 S.E.2d 22 (1951).
5. Plaintiff's employment does not place him at an increased risk of contracting right lateral epicondylitis as compared to the general public not so employed. As such, he is not entitled to workers' compensation benefits for aggravation of any pre-existing right lateral epicondylitis as an occupational disease. Hobbs v. Clean Control Corp., 154 N.C. App. 433,440, 571 S.E.2d 860, 864 (2002).
7. Plaintiff has not been disabled since being released to return to work without restrictions by Dr. Bahner on July 31, 2003. N.C. Gen. Stat. §97-2(9).
 ***********
The foregoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits associated with his alleged injury by accident on September 5, 2001 is DENIED.
2. Plaintiff's claim for worker's compensation benefits associated with an alleged occupational disease is DENIED.
3. Defendants shall pay an expert witness fee of $260.00 to Dr. Pridgen.
4. Defendants shall pay an expert witness fee of $390.00 to Dr. Bahner.
5. Defendants shall bear the costs of this action.
6. IT IS ORDERED that plaintiff's motion during oral argument before the Full Commission to reopen the record and admit additional evidence is DENIED.
This the 29th day of July 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DCS/llc