***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The plaintiff-employee is Sonia Young.
3. The employers are Home Care Industries, Inc., T-Shirts Unlimited, and Griffin Staffing.
4. The employer, Home Care Industries, Inc., is insured by Royal and Sunalliance. The employer, T-Shirts Unlimited, is insured by The Travelers Insurance Company. The employer, Griffin Staffing, is insured by Atlantic Mutual Insurance Company.
5. The defendants-employers regularly employs three (3) or more employees and are bound by the North Carolina Workers' Compensation Act.
6. At all times relevant, the employment relationship existed between the employee-plaintiff and the employer-defendants.
7. All parties are properly before the Commission, and Commission has jurisdiction of the parties and of the subject matter.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACTS
1. Plaintiff was an employee of the defendant, Home Care Industries, Inc. on November 25, 1998. She worked less than two months.
2. Plaintiff was employed by the defendant, Home Care Industries, Inc. as an assembler/packager and inspector when she claims that she was injured on the job while performing repetitive motion type duties.
3. Plaintiff was an employee of the defendant, T-Shirts Unlimited, no earlier than July 21, 1999, and was employed for a period of time extending no later than August 4, 1999.
4. Plaintiff was employed by the defendant, T-Shirts Unlimited, as a T-Shirt printing trainee.
5. Plaintiff was an employee of the defendant, Griffin Staffing, on September 20, 1999. She worked six and one-half days.
6. Plaintiff was employed by the defendant, Griffin Staffing, as a temporary employee at Mayville Metal as an assembly worker.
7. Plaintiff's average weekly wage while employed by the defendant, Home Care Industries, Inc. was $248.00.
8. Plaintiff's average weekly wage while employed by the defendant, Griffin Staffing, was $310.00.
9. The job duties of the plaintiff at Home Care Industries are contained in the Ergonomics' report of Al Gerrod. The report ultimately states that the overall risk factor for the job of the plaintiff rated a 6-7 on the overall risk factor/hazard adversity scale. Although on the numerical scale he wrote 5-6, he testified that in the end he felt plaintiff's job was a 6-7 out of 10 on the scale. However, plaintiff worked only a brief period of time.
10. Al Gerrod was hired by the defendant, Home Care Industries, Inc., to do a job analysis. He stated that an employee such as plaintiff has to produce some 70 units per hour or some 500 per shift. He said it was not a metal band but a hard rubber gasket. He provided an analysis and a video to the orthopedist, Dr. Edwards.
11. Al Gerrod deemed the job to be repetitive. The fingers, hands and wrists are in motion and continuous motion with no job rotation present. Thus the worker performs the same job/task without variation. There is forceful exertion in forcing the distal rubber gasket or ring around the circular metal piece. The task is repeated with high frequency. The report indicates, "The rubber ring/gasket, while flexible, is stiff. The metal ring is of an unyielding material, moderate-rated contact present." However, plaintiff's exposure was limited.
12. Al Gerrod was stipulated an expert in the field. His opinion was that the plaintiff's carpel tunnel syndrome was created by force, repetition and the wrist angle created from the work environment at the defendant, Home Care Industries, Inc. However, his opinion is assumes that plaintiff was exposed for the prerequisite time to cause damage.
13. Previously, the defendant-employer had used a warmer for the metal bands.
14. Plaintiff's job at Home Care Industries consisted of putting gaskets on a part of an Electrolux vacuum cleaner. She put the bag together then had to place or insert a metal ring putting the parts together with the metal rings/bands, banding the parts together. It was a production position, and she made production the first day.
15. Dr. Edwards opinion is that the Plaintiff's "probable" mild bilateral carpel tunnel syndrome was temporarily aggravated by the job position shown in the video. However, it was not caused by the job.
16. Dr. Edwards further stated that he felt "that the job did expose plaintiff to repetitive motion strain of her hands that the general public would not be expected to be equally exposed, but only for a brief period of time.
17. Dr. Clifford Wheeless' opinion at that time was that plaintiff was unable to perform any production-type employment. This was the case even before plaintiff began working for any of the employers.
18. Dr. Clifford Wheeless' opinion was that he felt that her carpal tunnel syndrome was caused by the work described of placing rubber rings onto vacuum cleaners. However, the undersigned does not accept this opinion as credible as plaintiff's employment was too brief for her condition to be considered an occupational disease.
19. Plaintiff can use the hand for some simple activities of daily living, but she is clearly frustrated with any serious use of the left hand. Her pain and frustration prevent her from performing anything but the lightest type activities.
20. Plaintiff's disability rating to the left hand is thirty-five percent.
21. Plaintiff's disability rating to the right hand is ten to twelve and one-half percent.
22. Plaintiff does not suffer from an occupational disease.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Industrial Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. N.C. Gen. Stat. § 97-86; Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000); Adams v. AVX Corp., 349 N.C. 676, 680,509 S.E.2d 411, 413 (1998). Where the exact nature and probable genesis of a particular type of injury involves complicated medical questions removed from the ordinary experience of laymen, only an expert witness can give a competent opinion as to the nature and the cause of the injury. Young v. Hickory Business Furniture, supra; Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Expert opinion that rests on speculation and conjecture is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of an injury or disease. Young v. Hickory BusinessFurniture, supra; Dean v. Carolina Coach Co., 287 N.C. 515, 522,215 S.E.2d 89, 94 (1975).
2. Plaintiff must prove three elements to establish existence of an occupational disease: (1) there must be proof of a causal connection between the disease and the employment, (2) the disease must be characteristic of a trade or occupation, and (3) the disease must not be an ordinary disease of life to which the public is equally exposed outside of employment. N.C. Gen. Stat. § 97-53 (13); Perry v.Burlington Indus., Inc. 80 N.C. App. 650, 343 S.E.2d 215 (1986) citingHansel v. Sherman Textiles, 304 N.C. App. 44, 283 S.E.2d 101 (1981). To be "characteristic of" and "peculiar to" an occupation, there must be an increased risk of contracting the disease in the employment in question as compared to the general run of occupations. Booker v. Duke MedicalCenter, 297 N.C. App. at 458, 256 S.E.2d at 189 (1979). The burden of proving each and every element of compensability falls squarely on plaintiff. Hansel v. Sherman Textiles, 304 N.C. App. 44, 54,283 S.E.2d 101, 106 (1981).
3. In the instant case, the medical evidence is insufficient to establish that plaintiff's condition was due to causes and conditions that were characteristic of or peculiar to her employment with any of the defendant-employers. The medical evidence in the instant case does not establish that plaintiff was at an increased risk of contracting the condition while performing her job with any of the defendant-employers. Plaintiff was only at the jobs for a short period of time. She was at her first job for only two months, her second job for only ten days, and the last job for only six and one-half days. Therefore, plaintiff must have already had the condition for which she complains well before working for any of the defendant-employers.
4. Plaintiff does not suffer from an occupational disease within the meaning of N.C.G.S. § 97-53(13). Any opinions given by the medical care providers are based on historical information presented by plaintiff which the undersigned does not accept as credible.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim is hereby DENIED.
6. Each side shall pay its own costs.
This the ___ day of August 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN
LKM/bjp